Argued November 28; reversed December 12, 1933

In re Lutke's Estate
# GOMOLL *v.* TEMPLE
(27 P. (2d) 1018)

*Albert L. Gordon,* of Portland, for appellant.
*David E. Lofgren,* of Portland, for respondent.

BAILEY, J. Robert G. Lutke, a resident and inhabitant of the city and county of Multnomah, Oregon, died testate in the city of Portland on September 20, 1930.

In his last will and testament, dated August 23, 1929, item III reads as follows:

"I give, devise and bequeath to my half-brother Charles Gomoll of Chicago, Illinois, eight thousand dollars ($8,000.00) to him and to his heirs forever."

Charles Gomoll, a resident and inhabitant of Chicago, Illinois, died on or about March 12, 1930, and left surviving him his widow, Mary H. Gomoll, and his daughter, Margaret Temple, both of whom are residents of Illinois.

The sole question involved in this appeal is whether the $8,000 bequeathed to Charles Gomoll "and his heirs" should be divided equally between his widow, Mary H. Gomoll, and his daughter, Margaret Temple, or the latter should receive the entire bequest.

A petition was filed by Mary H. Gomoll in the probate proceedings in the circuit court for Multnomah county, alleging that the petitioner, Mary H. Gomoll, the widow of Charles Gomoll, deceased, and Margaret Temple, the only child of decedent, are the sole heirs at law of said Charles Gomoll, deceased, and as such heir the petitioner is entitled to one-half of said $8,000.

In her answer to this petition Margaret Temple admits the allegations of the petition except those in which the petitioner claims to be entitled to one-half of the $8,000 bequest, and avers that she, as the only lineal descendant of Charles Gomoll, deceased, is entitled to the entire bequest.

No evidence was introduced on the hearing of this petition, and, if there be any ambiguity in the will, affecting the question before us, we are in the position of having to determine the intent of the testator solely from the provisions of the will itself. Section 10-510, Oregon Code 1930, reads as follows:

"When any estate shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done in case he had survived the testator."

It is the contention of the appellant, Margaret Temple, that under and by virtue of the section just quoted she, as the sole lineal descendant of Charles Gomoll, deceased, who predeceased the testator, is entitled to the entire $8,000, while Mary H. Gomoll, widow of Charles Gomoll, deceased, asserts that it was the intention of the testator to queath the $8,000 to Charles Gomoll, if said Charles Gomoll should survive the testator, otherwise the bequest should go to the heirs at law of Charles Gomoll, and that she as his widow and one of his two heirs is entitled to receive one-half of this bequest.

■ In construing a will the vital requirement is to ascertain what the testator meant, and his intention must be gathered from the instrument as a whole, read in the light of the circumstances which surronuded him when it was made. The question before us is to determine, if possible, from the will itself what the testator intended by the use of the words ''to him and to his heirs forever'' following the bequest of $8,000 to his half-brother Charles Gomoll in item III of the will under consideration. Were it not for the use of these words, Margaret Temple would, without question, under the provisions of § 10-510, Oregon Code 1930, be entitled to the entire bequest, as her father, Charles Gomoll, a half-brother of the testator, died before the testator and she is the only lineal descendant of her father.

The widow, Mary H. Gomoll, contends that the testator attempted to avoid the effect of said § 10-510 by the use of the words ''to his heirs forever'' and that by the use of these words the testator intended that if Charles Gomoll predeceased him, this bequest should be divided equally between herself and his daughter, pursuant to § 10-102, Oregon Code 1930. In

other words, the widow asserts that the testator by the use of the words "and to his heirs" intended to create a substituted bequest to the heirs of his half-brother, in the event that the latter did not survive him, and that we should construe the will so as to give effect to each word and sentence contained in the will.

If we were to interpret the will in accordance with the widow's contention as to this bequest, it would then be construed to read substantially as follows:

"I give, devise and bequeath to my half-brother, Charles Gomoll of Chicago, Illinois, eight thousand dollars ($8,000.00) to him, or, *in the event he does not survive me,* to his heirs forever."

With this interpretation, the word "and" used by the testator would be changed to "or" and the words in italics would have to be inserted.

The daughter, Margaret Temple, contends that the phrase "and to his heirs" is merely descriptive of the estate bequeathed to her father and does not create a substituted legacy.

In *Farnsworth v. Whiting,* 102 Me. 296 (66 Atl. 831), one of the provisions of the will was as follows:

"I give, devise and bequeath unto my wife, Helen A. Farnsworth, and her heirs, one-half of all my estate * * *."

The wife died four days before the testator, and her heirs contended that they were entitled to all the property mentioned in the quoted clause of the will. The common-law rule that a devise to a devisee would lapse if the devisee died before the testator had been modified in the state of Maine, as to relatives of the testator, by a statute similar to our § 10-510, supra, and therefore the facts in that case are similar to those in the case before us.

In discussing the meaning of the words "and her heirs" as used in connection with the devise and bequest of the testator to his wife, the court there said:

"The general rule is that a legacy or devise will lapse when the legatee or devisee dies before the testator. A testator may by express provisions in his will, or by language from which a clear implication may be drawn that such was his intention, prevent a lapse of the devise in case of the death of the legatee or devisee before the testator. But it is equally well settled that the use of mere words of limitation will not prevent the lapsing of the devise, and that the phrases, in different forms frequently and commonly used in a devise, such as 'and his heirs,' or 'and his heirs or assigns' are words of limitation merely descriptive of the nature of the estate devised, and do not create a substituted devise. Numerous cases from many jurisdictions in support of these general rules may be found in 18 A. & E. Encycl. of L., 2d Ed., 749 *et seq.*

"This rule of interpretation has been adopted in very clear and emphatic language in this state in Keniston v. Adams, 80 Maine 290, followed by Morse v. Hayden, 82 Maine 227, and Stetson v. Eastman, 84 Maine 367. A leading case in Massachusetts upon the subject is that of Kimball v. Story, 108 Mass. 384, wherein it is said: 'The general rule, prevailing in equity as at law, that if a legatee dies after the making of the will and before the death of the testator, the legacy lapses, is not affected by the insertion, after the name of the legatee, of the words "his heirs, executors, administrators and assigns," unless a declaration that the legacy shall not lapse is superadded; for those words, according to their uniform and well established interpretation, only express the intention of the testator to pass the absolute property in the estate real or personal to the legatee.' This case has been followed in three recent Massachusetts cases, Wood v. Seaver, 158 Mass. 411; Bryson v. Holbrook, 159 Mass. 280, and Horton v. Earle, 162 Mass. 448. In all of which cases

it was held by the court that similar expressions were only words of limitation, descriptive of the estate devised; that the death of the devisee or legatee having occurred prior to that of the testator, the legacy lapsed, and that the words did not show an intention upon the part of the testator to create a devisee by substitution.''

The foregoing quotation is in accord with the great weight of authority as to the construction to be placed on the phrase above referred to, unless a contrary construction can be deducted from the will as a whole.

See, in this connection, the annotation to *Re Estate of John Crayke Simpson* (304 Pa. 396, 156 Atl. 91) in 78 A. L. R. 989, where the editor in his preface to a, review of the many cases on the subject, observes:

''Though the technical rule requiring such a mention of heirs to pass a, fee simple estate has long since been abolished by statute, and it has been argued that, the rule being abolished, the effect of such rule in causing the lapse of devises and even of bequests and legacies where the devise or gift is to one 'and his heirs' should be relaxed, it has been the established doctrine, from that time to the present, that the words 'and his heirs' in such a case are words of limitation and not of purchase, and that such a devise or bequest lapses upon the death of the devisee or legatee in the lifetime of the testator unless an intention on the part of the testator that such phrase shall effect a substitutionary gift appears from the will itself.''

It is, however, contended that the rule in Shelley's case did not have reference, at common law, to personal property, and that therefore the word ''heirs'' as used in the Lutke will is not a word of limitation but creates a substituted legacy, in the event that the named legatee does not survive the testator. This contention is answered adversely to her contention in many of the cases cited in the annotation in 78 A. L. R.

989 and by the court in *Wood v. Seaver,* 158 Mass. 411 (33 N. E. 587), wherein it is said:

"The contention of the appellant is that the words 'All the aforesaid legacies are to them and their heirs,' found at the close of item 17 of the will, mean that the legacies are given to the legatees named in the will if alive at the death of the testatrix; but if not alive at that time, then to their heirs, respectively. 'And' in a will is sometimes read 'or', when the context shows that such is the intention of the testator, but there is nothing in the context here which shows that the word has not its customary meaning. In a legacy of personal property to a legatee named and his heirs, the word 'heirs,' although technically appropriate to real estate, is taken to be a word of limitation, and to indicate that the whole interest of the testator in the personal property is given absolutely to the legatee."

The courts endeavor to carry out the intention of the testator as expressed in his will. To do this it is sometimes necessary to construe the word "and" to read "or" or *vice versa.* As was said in *Farnsworth v. Whiting,* supra:

"It is true that courts have not infrequently held that the addition of the words 'or heirs,' instead of, as in this case, 'and heirs' implies a substitution so as to prevent a lapse of the devise upon the death of the devisee. As said by this court in Keniston v. Adams, *supra:* 'Although a very refined interpretation, it has been resorted to in instances where justice can be best administered only by its application.' It is also true, as remarked in that case: 'But courts have in some instances gone so far as to bring under the same rule devises running to a person named "and" his heirs, by making the word "and" read as if it were the word "or," but this has never been done unless the other provisions in the will require such a construction, and we can find no case where it has been permitted, if the devise runs to assigns as well as to heirs.' As ex-

pressed in the case of Gilmore's estate, 154 Penn. St. 523, 'Courts will transpose the clauses of a will, and construe "or" to be "and" and "and" to be "or" only when absolutely necessary to do so in order to support the evident meaning of the testator'."

In item I of the will here under consideration the testator gives and bequeaths to his wife, Fannie J. Lutke, if she shall survive him, all the personal property, furniture and personal belongings used in and about the home occupied by him at the time of his death, "to her and to her heirs forever."

In items XVIII, XIX, XX, XXI and XXII of the will the testator gives and bequeaths to certain relatives of his deceased wife, if they survive him, certain sums of money, and in the event that the legatees shall not survive him, or, in some instances, surviving, shall not attain the age of twenty-one years, the legacies are bequeathed to other relatives of his deceased wife, to be equally divided among them, "or the survivors of them, to them and to their heirs forever".

It is evident, from these items of the will, that the word "heirs", which is used not less than eleven times, is not employed by the testator to designate any substitute legatee to succeed to the bequests therein mentioned, for in each of the instances referred to in said items the bequest therein referred to is not made to the party or parties therein named, unless they in fact do survive the testator. The bequest to the widow of the testator is made expressly on the condition that she survive him, and if she should not survive him this bequest was to become a part of his residuary estate. The testator, therefore, in referring to this bequest to his wife, must have used the words "and to her heirs" as descriptive of the estate bequeathed to her.

In the other items referred to, XVIII to XXII inclusive, the bequests are given to certain designated individuals, "or the survivors of them, to them and to their heirs forever". In these instances the testator leaves no question concerning to whom the bequests are made, to-wit, to certain individuals who shall survive him; nevertheless he provides that such bequests shall be "to them and to their heirs forever".

In item X a bequest of $1,000 is made to Emily Strube, a niece of the testator, in the event she survives him; otherwise it is to be given to another niece, her sister, Mrs. Ida Pischke, "to her and to her heirs forever". And in the next item, XI, a bequest of $5,000 is given to Mrs. Ida Pischke if she survives the testator; otherwise the $5,000 is given to her children. It is hardly probable that the testator intended that in the event both Emily Strube and Mrs. Ida Pischke should predecease him, the $1,000 mentioned in item X should go to Mrs. Pischke's heirs at law as distinguished from her lineal descendants, while by item XI the $5,000 intended for Mrs. Pischke, if she should survive him, should go to her children in the event that she did not survive the testator.

In item XII the testator bequeaths to Fred W. Herzke, his cousin, if the latter survive him, the sum of $5,000; otherwise, this bequest is to go to Dagmar Herzke, wife of Fred W. Herzke, "to her and to her heirs forever". It is improbable that, in case both Fred W. Herzke and Dagmar Herzke should predecease him, the testator intended that the heirs of his cousin's wife rather than his own blood relatives, to-wit, the heirs of his cousin Fred W. Herzke, should be entitled to this bequest of $5,000. We also have an instance here in which the testator expressly provided that the widow of a relative of his should receive the bequest

in the event that the cousin should not survive the testator. The testator, however, undoubtedly intended that his cousin's wife must survive the testator in order to make effective the latter clause of this bequest.

The will contains many bequests to the blood relatives of the testator and to those of his deceased wife, Margaret Lutke, made to certain named individuals and to them (him or her) and to their (his or her) heirs, and containing no provision whatever as to who shall succeed to the bequest in case the legatee therein named does not survive the testator, unless the use of the word "heir" should be construed to create a substituted legatee. There are, so far as the testator's own relatives are concerned, at least ten such separate and distinct bequests, and several distinct and separate bequests to relatives of his deceased wife in which the words "and to his [or her] heirs forever", or "to them and to their heirs forever" are used.

In item IV, which immediately follows the item in question, the testator bequeaths to Margaret Temple, only child of his half-brother Charles Gomoll, the sum of $4,000. If she receives the $8,000 bequest mentioned in item III, the total received by her from this estate will be $12,000.

In item II the testator bequeaths $15,000 to his half-brother Edward Gomoll, if the latter shall survive him, otherwise $10,000 of this bequest shall go to Edna Gomoll, daughter of Edward, in the event that Edna survives the testator. By another provision of the will $2,000 is bequeathed to Edna "and to her heirs forever". If neither of the testator's half-brothers, Edward and Charles, survives him, and their daughters, named in the will, do, then those daughters will each

receive $12,000, by construing the phrase "and to his heirs forever" as used in the will to be words of limitation and not of purchase.

■ Taking the will as a whole, it is apparent that the testator did not intend that the words "and to his heirs forever" in the item in question should be construed as effecting a substitutionary gift, but as words of limitation. There is nothing in the will to indicate that the testator intended that the word "and" in the phrase referred to should be construed as "or", so as to permit the widow of the half-brother to share in this bequest.

Section 10-510, Oregon Code 1930, controls the disposition to be made of this special bequest. The appellant, Margaret Temple, the only lineal descendant of the half-brother of the testator, is entitled to the entire bequest.

The decree appealed from is reversed and the cause remanded with instructions to enter a decree in accordance with this opinion; neither party to recover costs in this court.