Argued December 13, 1939; modified January 9; reargued on re-, hearing March 19; former opinion adhered to April 23, 1940

# CORDON *v.* GREGG ᴇᴛ ᴀʟ.

(97 P. (2d) 732, 101 P. (2d) 414)

In Banc.

*Porter J. Neff,* of Medford (Neff & Frohnmayer, of Medford, on the brief), for appellants.

*B. L. Eddy,* of Roseburg, for defendants-respondents.

*Rice & Orcutt,* of Roseburg, for Guy Cordon, as executor.

RAND, C. J. Francis Marion Huitt died testate on October 14, 1937, leaving an estate of both real and personal property in Douglas county. He left as his sole heir at law James Gregg Huitt, his only child, a boy of the age of seventeen years. The boy died unmarried and without issue some two months later, leaving as his sole heir at law his mother, Mrs. Lucy M. Skeeters, the divorced wife of the testator and one of the defendants herein.

By his will, the testator named the plaintiff as executor and gave and devised all his property to the plaintiff in trust for his son with directions that all the devised property should be paid over and transferred to the son when he reached the age of twenty-one years. The will contained no provision directing what disposition should be made of the property of the estate in case the son should die before reaching the age of majority.

James R. W. Gregg is the duly appointed administrator of the son's estate. The remaining defendants, the respondents herein, are the persons who would have been the next of kin and heirs at law of the testator had the son predeceased his father. Plaintiff, as executor of the estate, brought this suit, praying for a declaratory decree to have judicially determined whether the undistributed intestate property of the deceased son descended, upon his death, to his mother as his sole heir at law or to those persons who would have been the next of kin of his father had the son predeceased the father. Upon the trial of the cause in the court below, a decree was entered adjudging that all the property of the estate of the son descended, upon his death, to the next of kin of the testator, and, from this decree, the mother and the administrator of the son's estate have appealed.

■ It is well settled in this state that the descent and distribution of intestate property is governed and controlled entirely by the statutes of this state and that it is only whenever the statute does not cover a particular situation that the common law of descent and distribution can be applied in determining heirship: *Smallman v. Powell,* 18 Or. 367, 23 P. 249, 17 Am. St. Rep. 742; *Miller v. Miller,* 117 Or. 399, 244 P. 526.

■ It is also settled in this state that, where the sole beneficiary of a trust created by a will dies and no further provision is contained in the will for the distribution of the trust property, the trust is terminated: *Winslow v. Rutherford,* 59 Or. 124, 114 P. 930.

Section 10-101, Oregon Code 1930, governs and controls the descent and distribution of real property in this state. So far as applicable here it provides:

"When any person shall die seised of any real property, or any right thereto, or entitled to any interest therein, in fee simple, or for the life of another, not having lawfully devised the same, such real property shall descend subject to his debts, as follows: * * *

"3. If the intestate shall leave no lineal descendants, neither husband, nor wife, nor father, such real property shall descend to his or her mother; * * *

"5. When any child shall die under the age of twenty-one years and leave no husband nor wife nor children, any real estate which descended to such child shall descend to the heirs of the ancestor from which such real property descended the same as if such child died before the death of such ancestor."

■ But for subdivision 5 thereof, the real property of the deceased child would descend to his mother since she alone is his sole heir at law, and it would pass to her under the provisions of subdivision 3 of said section. The only question, therefore, for decision here is whether the legislature intended, when it provided

that "any real estate which descended to such child shall descend to the heirs of the ancestor from which such real property descended the same as if such child died before the death of such ancestor", that the words "descend" and "descended", as used in the statute, should be given their common-law meaning of a succession of real property to an heir upon the death of his ancestor by operation of law and to exclude from the operation of the statute such real property as had been devised to the heir by his ancestor. Unless so intended by the legislature, the title to the real property of the deceased son must, by force of the statute, vest in the next of kin of the testator the same as if the child had died before the death of his father. In support of their claim that they succeeded to the real property upon the death of the son, the next of kin invoked the rule of the English common law that an heir shall not take by devise where he may take the same estate by descent. The reason for the rule is that title by descent was regarded at common law as the worthier and better title because it took away the entry of those who have a right to the land.

We do not believe that this rule does or ever has prevailed in this state, nor do we think that such a rule should be invoked in such a case for clearly in this state those who have a right to the land may enter upon and take possession regardless of whether the person in possession thereof acquired his title by descent or by devise. Moreover, in this case, the son did not take the same estate in the land by devise which he would have taken by descent, it having been devised not directly to the son but to the plaintiff in trust for the son. We recognize that it is a well-established rule that in the construction of statutes, words used in the

statute which have a well-defined legal meaning are to be given that meaning.

Until the statute of descent of this state was amended by chapter 184, L. 1905, no such provision as the one now under consideration was contained in the statute and, as far as we are advised, this particular provision has not been construed by any decision of this court. In enacting this provision, the legislature could have had no valid reason for importing into the statute any distinction between a title taken by devise and one taken by descent, such as was recognized by the early English common law.

■ The word "descended" is defined in The Oxford English Dictionary as "derived, sprung from a person or stock", while the legal meaning of the word "descent" is there defined as "the passing of property (in England only of real property) to the heir or heirs without disposition by will; transmission by inheritance". One of the definitions of the word "descent", as given in Webster's New International Dictionary, is "derivation, as from an ancestor; procedure by generation; lineage; birth; extraction". We think it was in the sense of being derived from rather than upon the existence of any distinction between the acquiring of an estate in real property by devise, which was regarded at common law as by purchase, and the descent of property to an heir from his ancestor by operation of law that the word is used in our statute. At the time of the testator's death, the mother of the deceased child was not an heir of the testator and, if the child had predeceased his father and his father had died intestate, the mother could not have inherited any of the real property of the testator. For this reason, although the question is not free

from doubt, we are of the opinion that, upon the death of the minor son, the real estate left by the testator descended to the heirs of the testator and not to the mother of the minor son. Had the son lived until he had attained the age of twenty-one years, his title to the real property would have passed, upon his death, to his mother as his sole heir at law under the provisions of the statute to which we have referred, but, since he died before reaching that age, we think it was the intention of the legislature that his estate in the real property devised to him by his father should pass to the heirs of his father the same as if he had predeceased his father.

■ In reference to what is an ancestral estate, it is said in 16 Am. Jur., Descent and Distribution, section 69, as follows:

"The typical ancestral estate is one which came to the possessor by descent. In some jurisdictions it is limited to property 'descending' to the intestate.

"The general tendency in modern statutes which still provide for ancestral estates, however, is to enlarge the idea to embrace gifts and devises from a relative. Under such statutes, property coming by devise or by gift is regarded as ancestral estate. The form of the statute must be consulted in such cases to determine whether a devise or a gift is within the statutory terms. Where a statute provides that the ancestor or parent from whom property descended to an intestate shall take it if he survives the intestate, there is, it would seem, room for the construction that the statute uses the word 'descend' to mean a gift from the ancestor and, if a gift, also a devise."

For this reason, the decree of the lower court in respect to the passing of the real property of the deceased son should be affirmed. In respect to the

personal property which the son derived from his father, we think a different rule should be applied.

 Section 10-102, Oregon Code 1930, which governs the distribution of intestate personal property, after providing for the support of the widow and minor children and the payment of the debts of the deceased, provides by subdivision 3 as follows:

"The residue, if any, of the personal property shall be distributed among the persons who would be entitled to the real property of the intestate, as provided in this act, and in the like proportion or share, except as is herein otherwise provided."

Although section 10-101, by subdivision 5 thereof, makes a distinction as to the descent of real property that descended from an ancestor to a child who dies under the age of twenty-one years from what would otherwise be the rule, no such distinction is contained in section 10-102 as to the distribution of personal property. Nothing contained therein indicates that the legislature intended to make any different disposition of the personal property of an intestate who died under the age of twenty-one years than of one who died over that age. From this, we must assume that the legislature intended to enact a uniform rule as to the distribution of personal property to be applied equally in both situations. We think, therefore, that the personal property of an intestate is to be distributed to his heirs at law regardless of his age at the time of his death. The clause contained in section 10-102, subdivision 3, "except as is herein otherwise provided", applies to both of these sections and takes this case out of what would otherwise be the rule that "the residue, if any, of the personal property shall be distributed among the persons who would be entitled

to the real property of the intestate, etc.''. For these reasons, we hold that the personal estate left by the deceased son, after the expenses of administration have been paid, must be distributed to his mother and not to the next of kin of his father and is subject to be administered upon in the administration of the son's estate.

The decree appealed from will, therefore, be modified to conform to what is here said; in all other respects it will be affirmed, and it is so ordered.

Argued on rehearing March 19; former opinion adhered to April 23, 1940

ON REHEARING
(101 P. (2d) 414)

RAND, C. J. In our former decision herein we expressed the opinion that, because of the language contained in the first paragraph of section 10-101, Oregon Code 1930, "not having lawfully devised the same", the common-law rule that an heir shall not take by devise where he may take the same estate by descent has been abrogated by the statute. After rehearing, we are now convinced that the rule does prevail in this state.

The whole purpose of section 10-101 is to regulate and control the descent of intestate real property and clearly, under our statute, the devise by the father to the son of his entire estate was a lawful devise and, hence, upon the death of the testator, his entire estate vested immediately in the son subject only to the terms of the trust. The rule of the common law, however, applied only in cases where the ancestor had made a lawful devise of his real estate to his heir and, hence, it could be applicable in this state only where there

had been a lawful devise to an heir by his ancestor of his real property. We are now convinced that the common-law rule above referred to has not been changed or abrogated by the statute and that such rule, although never heretofore announced in any decision of this court, we think is binding upon the courts of this state like any other applicable common-law rule which has not been abrogated by statute, under the doctrine announced in *Peery v. Fletcher,* 93 Or. 43, 182 P. 143; *United States F. & G. Co. v. Bramwell,* 108 Or. 261, 217 P. 332, 32 A. L. R. 829; and *Fidelity & Deposit Co. v. State Bank of Portland,* 117 Or. 1, 242 P. 823. That rule is stated by Blackstone as follows:

"* * * But if a man, seised in fee, devises his whole estate to his heir at law, so that the heir takes neither a greater nor a less estate by the devise than he would have done without it, he shall be adjudged to take by descent, even though it be charged with incumbrances; this being for the benefit of creditors and others, who have demands on the estate of the ancestor. 1 Chitty, Bl. Comm., *242."

▮▮▮ Nor do we think that, because the estate of the father was devised in trust for the son, who was not to come into possession thereof until he reached the age of twenty-one years, it was sufficient to take the case out of the operation of the rule of the common law above stated, since the father devised his entire estate to the son subject only to the trust and this devise was neither a greater nor a less estate than that which would have passed to the son had there been no will. Moreover, we think that the words "descend" and "descended", as used in subdivision 5 of section 10-101, should not be given the narrow technical common-law meaning but should be given a broader meaning so that, where any unmarried child dies under the

age of twenty-one years, the real estate which was derived by such child from an ancestor shall pass to the heirs of such ancestor the same as if the child had died before the death of the ancestor.

Based upon the grounds above stated, our former decision will be adhered to, but without costs to either party.

BEAN, J., not sitting.

———

LUSK, J. (specially concurring). I think the word "descend," in the clause "any real estate which descended to such child shall descend to the heirs of the ancestor from which such real property descended the same as if such child died before the death of such ancestor", should be given the same meaning throughout, and that is its technical common-law meaning. We know that it can have no other meaning in the phrase "shall descend to the heirs of the ancestor." To say that elsewhere in the same section it is intended to include property devised by will is to violate the established rule of statutory construction that, "In the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere, * * *." 59 C. J. 1003, § 597; *State ex rel. Eugene v. Keeney*, 123 Or. 508, 512, 262 P. 943, 946; *James v. City of Newberg*, 101 Or. 616, 619, 201 P. 212.

I therefore concur in the result.

ROSSMAN, BAILEY, and BELT, JJ., concur in the foregoing opinion.