Argued November 25, affirmed December 17, 1958

# REED ET AL *v.* REED, EXECUTOR ET AL

332 P. 2d 1049

*E. R. Robnett*, Portland, argued the cause and filed a brief for appellants.

*Charles T. Sievers,* Oregon City, argued the cause and filed a brief for respondents.

Before Perry, Chief Justice, and Lusk, Warner and Sloan, Justices.

WARNER, J.

This is an appeal in a proceeding brought by the four plaintiffs-appellants for a declaratory judgment construing the will of their grandfather James E. Reed, who died on December 10, 1954, and for a finding that they are pretermitted heirs of the testator and entitled to a share of 1/20 each in his estate. The defendants are James E. Reed's executor and decedent's four surviving children. From a decree to the contrary, the plaintiffs appeal.

The stipulated facts, so far as necessary to our consideration, are: that decedent executed his last will and testament on the twenty-first of September, 1946; that at that time his named devisees and legatees and sole heirs at law were his wife, two daughters and three sons; that one of said sons was John E. Reed, the father of the four plaintiffs; and that testator's wife and son John both predeceased the testator in the interim between the date of the execution of the will and his death.

It is the contention of plaintiffs that by reason of the terms of the will, they have been pretermitted and hence entitled to receive the same one-fifth they would have received if their grandfather had died intestate.

The defendant children of the decedent claim that plaintiffs are entitled only to the five dollar legacy that plaintiff's father, John E. Reed, would have received, if living.

The controversy between the parties revolves primarily around the following provision of testator's will:

"SECOND, I give and bequeath unto my beloved wife Anna M. Reed all of my property, both real and personal, and wherever situate, PROVIDED, That in the event my said wife dies prior to my death then and in that event I give and bequeath all of the rest and residue of my estate of every kind and nature unto my five children and heirs as follows, to-wit: Unto my son James L. Reed a one-fifth part thereof, unto my son John E. Reed the sum of Five and no/100 ($5.00) Dollars, unto my daughter Inez M. Lowry a one-fifth part thereof, unto my son Donald B. Reed two-fifths thereof, and unto my daughter Maxine M. Reed a one-fifth thereof."

The plaintiffs, to support their contention, seek to circumvent the force and effect of our anti-lapsing statute. This is ORS 114.240 and provides:

"When any estate is devised to any child, grandchild or other relative of the testator, and such devisee dies before the testator, leaving lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done if he had survived the testator."

■ They argue that it applies solely to devises of real property and, inasmuch as the Second provision of

the will grants only a legacy of personal property to their father, John E. Reed, to wit: the sum of $5, the anti-lapsing statute does not operate to give them anything from their grandfather's estate and they, therefore, stand before the court as the children of the testator's dead son, "not named or provided for in such will" (ORS 114.250, relating to pretermitted heirs).[①]

To arrive at the foregoing conclusion, the plaintiffs argue that the word, "devise," as it appears in ORS 114.240, is solely employed with reference to testamentary gifts of real property and precludes the concept of a "bequest" of personalty, such as the $5 legacy for their father. In short, they say that the bequest of $5 did not survive the demise of their father, John E. Reed.

This is apparently the first time since the anti-lapse statute was enacted in 1853 that its comprehensiveness as to all types of property, real and personal, has ever been challenged in this court. Moreover, during the intervening period of more than 100 years, it has stood without amendment of any kind.

The words "any estate," "devised" and "devisee," as used in ORS 114.240, have apparently been accepted by bar and bench as so clearly including legacies and bequests that no one has ventured to suggest the contrary. Such an attitude is further demonstrated in the court by *Gomoll v. Temple,* 145 Or 299, 27 P2d 1018 (1933), and *In re Buell's Estate,* 167 Or 295,

---

① ORS 114.250. "If any person makes his will and dies, leaving a child or children, or, in case of their death, descendants of such child or children, not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, so far as regards such child or children or their descendants, not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate; and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part."

117 P2d 832 (1941), to which we will later make further reference.

"Generally," says 31 CJS 8, Estates § 1, "when legal enactments are intended to apply exclusively to one or the other of these different species of property, the statutes use the proper qualifying words 'personal' or 'real' estate, as the case may require." Cf *Read v. Town of Jamaica,* 40 Vt 629, 635. Here, we find no words of specific limitation. Aside from the significant presence of the words "real and personal [property]" which appear in the statute, the anti-lapsing statute is still amenable to the construction that it was intended to apply to testamentary disposition of both real and personal property.

In *Stubbs v. Abel,* 114 Or 610, 233 P 852, 236 P 505, it is demonstrated at considerable length and by quotations from a number of impressive authorities that the word "legacy," may include real property and that the word, "devise," is frequently used in referring to a gift of personal property and, further, that the words, "legatee" and "devisee," are frequently used interchangeably. See 1 Page on Wills (Lifetime ed) 8, § 6, where the author says: "From an early period, courts and textwriters have ignored the technical distinctions between the words which refer to realty and those which refer to personalty; and used them more or less interchangeably."

■ We are not unmindful that the Stubbs case involved the construction of a will and that the court's references to the interchangeability and comprehensive meaning of the particular words itemized above had reference to similar words found in the instrument under review in that case, whereas, on this appeal we are not giving construction to a will but, at this point, to a statute. This, we deem a distinction without a

difference. In the first place, the statute we have before us is a part of our probate code and relates solely to wills. Moreover, it is a well-established rule that in the construction of statutes, words used in the statute which have a well-defined legal meaning are to be given that meaning. *Cordon v. Gregg,* 164 Or 306, 311, 97 P2d 732, 101 P2d 414.

■ Impliedly, the appellants treat the word "estate," in the phrase, "when any estate is devised," as being limited only to an interest in real property. Such, however, is not true. The word, "estate," among its several distinct meanings, is "any species of property, real or personal" and: "Standing alone without qualification or restriction, it will include all kinds of property, real, personal, and mixed." *Connertin v. Concannon,* 122 Or 387, 392, 259 P 290; 19 Am Jur 462, Estates § 2; 31 CJS 8, Estates § 1.

The word, "any," which is a part of the statutory phrase referred to, has a comprehensive meaning and "is an adequate term with which to express the idea of 'every.'" *Pugsley v. Smyth,* 98 Or 448, 478, 194 P 686.

When we examine again the opening phrase of ORS 114.240, i.e., "When any estate is devised * * *," and apply to each of its several words their "well-defined legal meaning" (Cordon v. Gregg, supra), we cannot avoid the conclusion that they read and mean as if written: "When any estate in real or personal property is devised or bequeathed to any child, * * *."

Indirectly, the construction we now accord to the anti-lapse statute, has long since had the implied approval of this court. In the Gomoll case, supra, the child of a legatee who predeceased the testator was declared to be entitled to receive a legacy of $8,000 under the anti-lapsing statute. The same situation

prevailed in *In re Buell's Estate,* supra, where the gift to a deceased parent was both real and personal in character. These findings were made by direct reference to ORS 114.240, but without attempting to construe the section as we now do. They take our present construction for granted.

■ Appellants contend that notwithstanding the inclusive construction we give to ORS 114.240, it still follows that a legacy of only $5 to their predeceased father would not satisfy the requirements of the pretermission statute (ORS 114.250) because plaintiffs were "not named or provided for in such will." To arrive at this conclusion they give a tortured construction to the words "provided for" and claim that in the absence of a naming the provision must be "substantial." To support this, they offer but one citation: *Wadsworth v. Brigham,* 125 Or 428, 259 P 299, 266 P 875, relying particularly on what is found at pages 450-453. It is sufficient to say that the peculiar and unusual provision in the Brigham will reviewed in that case neither named nor provided for decedent's daughter, born out of wedlock (p 451), and the court's conclusions derived therefrom do not support appellants' proposition.

In *Gerrish v. Gerrish,* 8 Or 351, 354, reference is made to the pretermission statute of this state as "an exact copy of the Missouri statute." We, therefore, turn to the informing case of *Lawnick v. Schultz,* 325 Mo 294, 28 SW2d 658 (1930). Factually, the situation there presented is identical with the instant case. The will of plaintiffs' grandfather had provided only a $5 legacy for his daughter, who predeceased him. The plaintiffs sought there, as here, for a judgment that they were pretermitted by the will and entitled to take as if their grandparent had died intestate as to

them. The court, in disposing adversely to their claims, said:

"Adverting to the present will, it advises that the testator called to mind his daughter, the mother of plaintiffs, and not only named her, but bequeathed her a legacy of $5.00. While the amount of the legacy left his daughter was tantamount, had she been alive, to a virtual disinheritance of her, nevertheless his will is effective, and his power to disinherit her by that means was plenary. Had his daughter Mary Schultz Ushler been alive at his death, then, because she was named and provided for in testator's will, section 514 would have remained inactive and inoperative, for the will demonstrates conclusively that she was not forgotten. It would have excluded her from inheriting a further portion of his estate, and consequently she would have been provided for within the meaning of section 514. (At page 660)

\* \* \* \* \*

"On the facts before us, sections 514 and 516, Revised Statutes 1919, are correlated.② Section 516 provides, in substance, that, if a testator give an estate, real or personal, by his will to his child, grandchild, or other relation, and such child, grandchild, or other relation shall have predeceased him, then the lineal descendants of such child, grandchild, or other relation shall take the estate so given by his will in their place and stead. It is evident, then, that plaintiffs, by virtue of section 516, are entitled to take the legacy of $5 bequeathed their mother by the will of the testator, their grandfather. (At page 660)

" \* \* \* By virtue of section 516, as the descendants of their mother, plaintiffs were *provided for* within the meaning of section 514, *as though they had been named* and bequeathed a

---

② Section 514 is the Missouri pretermission statute. Section 516 is the Missouri anti-lapsing statute. These Missouri statutes are, respectively, identical with ORS 114.250 and ORS 114.240.

legacy by said will. * * * (at page 661) (Emphasis ours.)

"Plaintiffs contend that, in order to hold that the will provides for them, the will must show that the provision for them was substantial. In arguing the question, they say that the $5 left to their deceased mother and coming to them by virtue of section 516 was not such a substantial provision as to render section 514 inapplicable and inoperative. * * * It is not, in our opinion, a question of whether a substantial amount was left by testator's will to the heirs alleged to be pertermitted. The question is: Were they forgotten and unintentionally omitted by him? If the testator's will names or provides for heirs, alleged to be pretermitted, expressly or in fact, in any amount, whether substantial or not, the will itself thus demonstrates that they were not forgotten or unintentionally omitted. * * *." (At page 661)

The court also quotes from its earlier opinion in *Guitar v. Gordon,* 17 Mo 408[®], at page 413, as follows:

" ' * * * If the provision made for the daughter should be less than an equal part of the estate, to declare an intestacy as to her children, would be doing violence to the principle that recognizes the right of the testator to disinherit his children and to dispose of his property as he pleases.' "

Shortly after its decision in the Lawnick case, supra, the Supreme Court of Missouri was confronted with another contest of the same character and, incidentally, involving another $5 bequest to a child of testatrix who had predeceased her mother. *Miller v. Aven,* 327 Mo 20, 34 SW2d 116. The court cited and followed its holding in Lawnick.

The decree of the circuit court is affirmed.

---

[®] *Guitar v. Gordon,* supra, quoted with approval in *Gerrish v. Gerrish,* 8 Or 351, 354.