KALMBACH, INC., et al., Appellants,

v.

The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, INC., Appellee.

No. 74–1415.

United States Court of Appeals, Ninth Circuit.

Jan. 12, 1976.

Irving S. Bertram (argued), Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, Alaska, for appellants.

Richard A. Helm (argued), Burr, Pease & Kurtz, Anchorage, Alaska, for appellee.

## OPINION

Before BROWNING, DUNIWAY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants, the plaintiffs below, appeal from a judgment in an action on maritime insurance policies to recover for the loss of two sea-going vessels, a tug and a barge. We reverse.

### THE PROCEEDING BELOW

Initially, the district court denied each of the parties motions for summary judgment, with leave to renew. The parties, being unable to agree on the facts, provided a record by way of requests for admissions and answers thereto. Appellants again moved for summary judgment, as did appellee. The court then granted appellee's motion for a summary judgment. Appellants then filed a motion for a new trial which was considered by the court as a motion to reconsider. This motion was granted. The earlier order granting summary

judgment was vacated and a trial was ordered on the sole issue of the agency relationship between one Fred Diercks and appellants. Following the trial on the issue of agency, the court found in appellee's favor, entered findings of fact and conclusions of law, and signed the partial summary judgment and judgment on the issue of agency from which this appeal is prosecuted.

### FACTS

The insurance policies, covering a tug and a barge owned by appellants, were issued to cover the vessels from September 14, 1966, to April 14, 1967. The policies are identical in their terms except for the vessel insured, the value of the vessel and the premium to be paid. Each of the policies provided, among other things:

"[7] *This Policy is agreed to cover the Vessel* herein insured as employment may offer, in port and at sea, . . . *at all times, in all places and on all occasions, situations, services and trades whatsoever and wheresoever, under power of sail; . . .*" [Emphasis added.]

"[11] Held covered in the event of any breach of warranty, or deviation from the conditions of this Policy, at an equitable premium to be arranged, notice to be given on receipt of advices."

[Indorsement]

"[14] NAVIGATION restricted to Gulf of Alaska and Aleutian Island Waters not beyond Attu Islands. Warranted returned to Adak Island by end of October and laid up during balance of policy term."

"*Warranted* intended towing arrangements from Anchorage approved by Capt. Logan at Anchorage *prior to departure.*" [Emphasis added.]

Paragraph 11 is referred to by the parties as the "held covered" clause. Paragraph 14 is referred to as the "trading warranty."

Appellants placed the insurance through Fred Diercks, a partner in a San

**554**

Francisco insurance brokerage firm, who, in turn, secured the policy from appellee through James E. Moore & Co. of the same city and Trans-Atlantic Marine, Inc., a marine insurance company.

Appellants concede that under the language of the original policies, the vessels were to be "laid up" after October 31, 1966. However, in mid-October they decided to make an additional trip from Adak to Attu during the month of November and contacted Diercks. This contact opened a series of communications, written and oral, between the various individuals, which resulted in Moore, on October 28th, hand delivering to Diercks an extension of the coverage on each of the vessels, the endorsement on the tug policy reading thusly:

> "TRANS-ATLANTIC MARINE, INC.
> BRIDGEWATER, MASSACHUSETTS
>
> THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
>
> Assured  SAMKAL LINES, LTD., AND/OR BARBARA C. KALMBACH AND/OR LONG BEACH TUGBOAT COMPANY AND/OR PUGET SOUND TUG & BARGE CO.
>
> Steel Tug "BETTLES"
>
> Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that in consideration of an additional premium of $1,375.00 at a rate of 1.25% the Navigation Warranty hereunder is amended to read as follows:
>
> > NAVIGATION restricted to Gulf of Alaska and Aleutian Island Waters not beyond Attu Islands. *Warranted returned to Adak Island by end of November and laid up during balance of Policy term.*
>
> and not as heretofore.
>
> *It is further understood and agreed that this extension of movement will be subject to approval of Captain Logan and further subject to a satisfactory long range weather forecast.*
> All other terms and conditions remaining unchanged. Endorsement to be attached to and made part of Policy No. HEE. 1120. [Emphasis added.]
>
> TRANS-ATLANTIC MARINE, INC.
> Date: October 28, 1966.
> By: /s/ Ernest A. Enos"

Diercks claims that he registered disapproval of the new endorsement with reference to the approval of Captain Logan and the satisfactory long range weather forecast, but he did not inform appellants of this language. The vessels sailed early in November and on November 7th went aground and were lost.

### ISSUES

#### I.

Was the finding of the district court on the issue of agency clearly erroneous?

#### II.

Does the "held covered" clause entitle appellants to a judgment as a matter of law?

#### I.

### AGENCY FINDING

■ Our review of the evidence satisfies us the finding of the district court that Diercks was the agent of appellants is not clearly erroneous. Although the evidence might support a finding that he was acting in two capacities, we are subject to the restrictions of Rule 52(a), F.R. Civ.P.

#### II.

### APPLICABLE LAW

A recitation of a few fundamental principles of insurance law is helpful to a proper understanding of the "held covered" and other provisions of the original policy, the extension of time provision in the October 28th endorsement, and the provision requiring securement of the Captain's approval and the long range weather forecast.

■ Whether federal or local law applies to a maritime insurance contract can present a troublesome question. *Compare Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 322, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (Frankfurter, J., concurring),[1] *with Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). *See Irwin v. Eagle Star Insurance Co.*, 455 F.2d 827 (CA5 1972). We apply local law in this case

---

1. For a general analysis of *Wilburn* and some problems it left undecided see The Law of Admiralty, Gilmore & Black, 2nd Ed., pp. 68–71.

because both parties urge us to do so, and because there is no statutory or judicially established federal admiralty rule governing the provisions in question. Since we find no significant distinction between the law of California, where the contract was made, and the law of Alaska, the situs of the insured property, we shall cite authorities from both jurisdictions.

■■■■ We start with the fundamental rule that if there is any doubt as to the meaning of a clause in an insurance policy, it must be construed against the insurer and in favor of the insured. *National Indemnity Co. v. Flesher*, 469 P.2d 360 (Alaska 1970); *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Normally, a policy is to be construed to provide that coverage which a layman may reasonably expect, given his interpretation of the policy's terms. *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972); *Gray v. Zurich Ins. Co., supra.* Where the language of insurance clauses is clear, such as the "held covered" and the "thirty day extension" clauses, resort may not be had to parol evidence or evidence of custom or usage to explain the language. The intent of the parties must be determined from the policy itself. *Pepsi-Cola Bottling Co. v. New Hampshire Ins. Co.*, 407 P.2d 1009 (Alaska 1965). Endorsements become part of an insurance contract and must be construed with it. 13 Appleman, Insurance Law and Practice, 280; *Jew Fun Him v. Occidental Life Ins. Co.*, 88 Cal.App.2d 246, 198 P.2d 711, 713 (1948).

■■■■ The language of an exclusionary clause must be plain and clear and must be construed strictly against the insurer. *State Farm Mutual Auto Ins. Co. v. Jacober*, 10 Cal.3d 193, 200, 110 Cal.Rptr. 1, 514 P.2d 953 (1973); *Harris v. Glens Falls Ins. Co.*, 6 Cal.3d 699, 701, 100 Cal.Rptr. 133, 493 P.2d 861 (1972).

Despite what is intimated by appellee, we can see no significant difference between construction of an ordinary insurance policy and one with marine insurance overtones. In general, each is to be construed against the insurance company. Dover, Handbook to Marine Insurance, pp. 212, 213.

## ANALYSIS

Our function is to determine the extent, if any, which the October 28th provisions for the approval of Captain Logan and the long range weather report modified the broad coverage under Paragraphs 7 and 11 of the original policy and the "notwithstanding" provision of the October 28th endorsement.

The coverage provided by paragraph 7 of the original policy is all inclusive. It covers the vessels, "at all times, in all places and on all occasions, situations, services and trades whatsoever and wheresoever, . . . with leave to sail or navigate with or without pilots . . . in all situations and to any extent . . . ." To further broaden the coverage and to protect the assured from a possible breach of warranty, condition, or deviation, the company scriveners employed the language of paragraph 11, which provided that the vessels were "*held covered in the event of any breach of warranty, or deviation from the conditions of this policy*, at an equitable premium to be arranged, notice to be given on receipt of advices." Even appellee does not argue that these two paragraphs did not provide the broadest available type of coverage.

The original endorsement requiring the vessels to be "laid up" by the end of October might have rendered ineffective the coverage provisions of the original policy after October 28th. In mid-October, however, the parties started negotiations on the final endorsement, here under consideration, which became effective on October 28th and permitted navigation of the vessels to the end of November, thus changing the termination time of the original endorsement.

Appellee concedes that if the language "It is further understood and agreed that this extension of movement will be subject to approval of Captain Logan and further subject to a satisfactory long range weather forecast." had not

been added the vessels would have been fully insured at the time of the casualty. It argues, however, that this language was inserted as a warranty or a condition to liability and that since the condition or warranty was not fulfilled, the extension did not become effective.

At the outset, we are at a loss to understand the meaning of the questioned provision. Among other things, we note the following imperfections: (1) upon whom was the burden of securing the Captain's approval; (2) when was the approval to be delivered; (3) to whom was the approval to be delivered; (4) what was the Captain to approve, the hulls of the respective vessels, the route of the voyage, or what have you? With reference to securing a ". . . satisfactory long range weather forecast", (a) who was responsible for securing the forecast; (b) when was the forecast to be obtained; (c) when obtained, to whom was the forecast to be delivered, if at all?

■ Assuming, however, that the language of the challenged provision is sufficiently clear to constitute a condition or a warranty we, nonetheless, hold that the "held covered" clause in the body of the policy controls. There is no challenge to the outright grant of an extension of time to the end of November in the October indorsement. The "held covered" clause means that the vessels remained covered even ". . . in the event of *any* breach of *warranty*, or *deviation* from the *conditions* . . ." of the policies. While it is true that appellee could have worded the restrictive endorsement clause so as to modify or even eliminate the "held covered" clause by using language such as, "the held covered clause of the policy is not applicable to these warranties and conditions" or "this policy is null and void if these warranties and conditions are breached," or similar language that would clearly indicate that the broad language in the "held covered" clause would not be appli-

cable in these circumstances, the fact remains that appellee failed to use such language.

■ We find no authority supporting appellee's argument that the "held covered" clause should be applied only to *minor* deviations. The language in the "held covered" clauses analyzed in the texts [2] and cases cited by appellees are restrictive in nature and bear no resemblance to the all-inclusive language in the clause before us. Where the language of a clause, such as here, is unambiguous, it is our duty to enforce it as written. This means that in addressing ourselves to the phrases used by appellee in connection with securing the approval of the Captain and the long range weather reports, we must not lose sight of the unquestioned clarity of the language used in the "held covered" clauses. The vessels were manifestly insured against loss even ". . . in the event of *any* breach of warranty or deviation from the conditions . . . ." When used in its present context, the word "any" has a comprehensive meaning and has been judicially defined to mean "all or every." *Atlantic Cas. & Ins. Co. v. Interstate Ins. Co.*, 28 N.J.Super. 81, 100 A.2d 192, 198 (1953). The common understanding of the word is that it means all or every. *McKay v. Equitable Life Assur. Society*, 421 P.2d 166, 169 (Wyo.1966); *State v. Bishop*, 257 Iowa 336, 132 N.W.2d 455, 458 (1965); *Commonwealth v. Passell*, 422 Pa. 473, 223 A.2d 24, 27 (1966); *Reed v. Reed*, 215 Or. 91, 332 P.2d 1049, 1052 (1958); *Keystone Tankship Corp. v. Willamette Iron & Steel Co.*, 222 F.Supp. 320 (D.Or.1963). Generally, though not necessarily, the word serves to enlarge the noun it modifies. *United States v. Gertz*, 249 F.2d 662, 665 (CA9 1957).

Of great significance is the language of the October 28th endorsements immediately following the challenged clauses reading: "All other terms and conditions remaining unchanged." If this language

---

**2.** A Handbook to Marine Insurance, Dover, pp. 344, 362, 367. Elements and Practice of Marine Insurance, pp. 41, 54, 56, 57.

doesn't mean that the "held covered" clauses remained in full force and effect, we are at a loss to find meaning for its inclusion in the endorsements.

Even assuming that it is proper, as appellee asserts, to compare "held covered" clauses in time policies with those in voyage policies, the argument fails. A case closely in point is *Greenock Steamship Co. v. Maritime Ins. Co.,* 1 K.B. 367 (1902). There, the "held covered" clause before the court in a voyage policy was closely akin to the clause before us. We quote the clause in *Greenock*: "Held covered in case of any breach of warranty, deviation and/or any provided incidental risk of change of voyage, at a premium to be hereinafter arranged." *Id.* at 374. There the ship left port with an insufficient supply of fuel and was required to burn its fittings and other wooden articles in order to reach its destination. Holding that the ship had breached its warranty of seaworthiness, which is "far and away the most important of the few implied warranties which a shipholder enters into when he insures his ship . . ." *Id.* at 374, the court concluded that the "held covered" clause applied and held the underwriter for the loss sustained. It was so held even though the breach of warranty was not discovered until after the loss had occurred.

Manifestly, if the "held covered" clause in *Greenock* protected the ship against loss on a breach of the fundamental warranty of seaworthiness, the clause before us protects appellants on the loss of their ships.

Consequently, the positive and unmistakable language of the "held covered" clause necessarily includes the alleged warranty or condition in the October endorsement.

## OTHER CONTENTIONS

Appellee's other contentions, such as lack of jurisdiction, have received our consideration. We find them without merit.

## CONCLUSION

We conclude that the judgment of the district court must be vacated and the cause remanded with directions to enter a summary judgment in favor of appellants on the issue of liability. Upon remand the trial court should determine what are equitable additional premiums on the respective policies under the "held covered" clauses. In the absence of any showing that failure to obtain the approval of Captain Logan, or the failure to obtain satisfactory long range weather forecasts, contributed to the causation of the loss of the vessels, the additional premiums fixed in the October 28th endorsements can be treated as equitable additional premiums under the "held covered" clauses. Moreover, if the value of the vessels is in dispute, that issue must be tried.

It is so ordered.