**Glenn ORGAN, Plaintiff,**

v.

**Mike CONNER and British Marine Mutual Insurance Association, Ltd., Defendants.**

**No. A91–510 Civ.**

United States District Court, D. Alaska.

April 21, 1992.

**694**

Richard J. Smith, Sandberg & Smith, Anchorage, Alaska, for Glenn Organ.

Thomas A. Mathews, Bliss Riordan, Anchorage, Alaska, for British Marine Mut. Ins. Ass'n, Ltd.

## ORDER

HOLLAND, Chief Judge.

*Motion to Remand; Motion to Compel Arbitration and Stay*

The court has before it a motion to compel arbitration filed by defendant British

---

**1.** Nov. 18, 1991, Affidavit of Glenn Organ at 2, attached as Exhibit 1 to Memorandum in Support of Opposition filed Nov. 19, 1991 (Clerk's Docket No. 16).

Marine Mutual Insurance Association, Limited. British Marine also requests a stay or dismissal of further proceedings in this court. Plaintiff Glenn Organ opposes the motion and requests that the matter be remanded to state court. By notice filed February 28, 1992, British Marine withdrew its request for oral argument.

Organ is a fisherman in Kodiak, Alaska. He insured his fishing vessel, the *F/V Lady Laurie*, with British Marine. British Marine is a mutual protection and indemnity association, organized and registered under the laws of England. It is composed of shipowners who mutually agree to insure themselves against protection and indemnity risks pursuant to the association's rules (herein generally the "Rules" or "British Marine's Rules"). Insureds are considered "members" of the association. Ribelin Lowell & Company was the "surplus lines broker" through which the policy was issued.

Organ became a member of the British Marine association effective June 14, 1990. According to his affidavit,[1] Organ and co-owner Laurie Knapp received the binder and "Certificate of Entry" for the *Lady Laurie* the following August. The certificate sets out "special clauses" and some terms and exclusions. It does not include British Marine's Rules, but does refer to them. A notation at the bottom of the last page of the certificate indicates that copies of British Marine's Rules are available and should be obtained. The certificate of entry does not contain any specific mention of dispute arbitration in London, England. The arbitration clause is discussed in the Rules.

Organ has testified that he was unaware of the London arbitration clause until May 1991.[2] At that time, he received a copy of "The Shipowners Mutual Protection and Indemnity Association (Luxemborg) Class I Rules". Shipowners Mutual has nothing to do with British Marine, but its rules do

---

**2.** Nov. 18, 1991, Affidavit of Organ at 2.

include a clause requiring dispute arbitration in London. Plaintiff states[3] that the first time he saw a copy of British Marine's Rules is when his attorney acquired a copy from the Alaska State Division of Insurance in November of 1991.

On October 10, 1990, John Robles was injured aboard the *F/V Lady Laurie* while she was in lay-up in Kodiak Harbor. Robles subsequently filed suit against Organ and the *F/V Lady Laurie*. British Marine disclaimed coverage for Robles' claims. The *Lady Laurie* was subsequently seized by federal marshals. An order of interlocutory sale of the vessel was obtained by Robles. On the eve of sale, British Marine, in conjunction with the financing bank and its breach of warranty carrier, entered into negotiations with Robles. According to plaintiff, a secret and undisclosed settlement agreement brought Robles' claims to an end. Organ missed the spring, summer, and fall fishing seasons. As of November 18, 1991, the *F/V Lady Laurie* was still under seizure in Kodiak. The mortgagee bank seized the vessel after it was released from the arrest effected by Robles.

On August 30, 1991, Organ filed suit against British Marine in state court alleging breach of contract and negligence.[4] British Marine removed the action to federal court, citing subject matter jurisdiction pursuant to 9 U.S.C. § 205, the Federal Arbitration Act.

The issue before the court is whether it has subject matter jurisdiction and whether the court must compel plaintiff to submit his dispute to arbitration.

### Subject Matter Jurisdiction

■ British Marine argues that the court's subject matter jurisdiction flows from the Federal Arbitration Act. Sections 203 and 205 of Title 9, United States Code, grant the federal district court jurisdiction and permit removal of disputes concerning arbitration. This court's subject matter jurisdiction can also be found under 28 U.S.C. § 1333, admiralty and maritime jurisdiction. Insurance on a vessel is within that jurisdiction. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1954); *Simon v. Intercontinental Transport (ICT) B.V.*, 882 F.2d 1435 (9th Cir. 1989); *Royal Insurance Co. of America v. Pier 39 Ltd.*, 738 F.2d 1035 (9th Cir.1984). Since this court has subject matter jurisdiction flowing from two statutory sources, Organ's motion to remand is denied.

### Arbitration

■ The other question of substance presented to the court is whether this court must refer the parties' dispute to arbitration in London. The Federal Arbitration Act indicates that arbitration shall be ordered after the court is satisfied the issue is referable to arbitration under the agreement. 9 U.S.C. § 3. This is also the approach suggested under AS 09.43.020. The primary disputed issue before the court is whether the arbitration rule is enforceable against Organ.

Organ argues that the arbitration provision in British Marine's Rules is unenforceable because he was unaware of it. Organ has stated that he did not receive British Mutual's Rules until November 1991.[5] He testified that until May 1991, when he received the Shipowners Mutual rules, he was totally unaware of any requirement that disputes be arbitrated in London. There is no testimony or evidence of what oral or written information, if any, was conveyed to Organ from the broker, Ribelin Lowell.

British Marine argues that its Rules, together with the certificate of entry for the *F/V Lady Laurie*, constitute the terms of

---

3. Memorandum in Support of Opposition at 3 n. 2, filed Nov. 19, 1991 (Clerk's Docket No. 16), and Nov. 19, 1991, Affidavit of Richard J. Smith at 2, attached as Exhibit 4 to said memorandum.

4. Organ also named Mike Conner in the suit. Defendant Conner is alleged to have negligently caused Robles' injury. Conner is allegedly an Alaska resident. As of this date, a proof of service on defendant Conner has not been filed in this case, and the court has ordered plaintiff to show cause why service has not been made (Clerk's Docket No. 40).

5. Memorandum in Support of Opposition at 3 n. 2, filed Nov. 19, 1991 (Clerk's Docket No. 16).

the insurance contract. It is undisputed that Organ received the certificate of entry which referred to the Rules. Therefore, British Marine argues, Organ cannot argue he was unaware that his insurance was provided subject to the Rules, including the London arbitration provision. British Marine relies upon an unpublished case, *Waveco Corp. v. Pacindat Mutual Protection & Indemnity Ass'n*, No. 85 Civil 10001 (S.D.N.Y. June 23, 1986).[6] British Marine argues that arbitration clauses are commonplace, that Organ's insurance broker was aware of the conditions of his insurance, and that such knowledge binds Organ.[7] British Marine cites the rule that in the field of marine insurance, the broker is the agent of the insured, even though brokers are compensated by commissions from the underwriters' premiums and they act as intermediaries both in placing the risk and handling the claim. *Lien Ho Hsing Steel Enterprise Co. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir.1984); *see also Kalmbach, Inc. v. Insurance Co. of Pennsylvania*, 529 F.2d 552 (9th Cir.1976).

In *Weihtag*, an insured sought to be relieved from a Rotterdam forum selection clause in a marine insurance contract. The insured argued that he had purchased the insurance through a broker and that he would not have agreed to the forum selection clause had he been informed of it in advance. The court first turned to the applicable state law, that of Oregon. Under an Oregon statute, a broker is the agent of the insurer. *Weihtag*, 738 F.2d at 1458. However, after a review of the cases, the court rejected that position. The court held that to find the broker to be the agent of the insurer would reverse the normal agency relationship whenever an insured was disgruntled with a clause in a contract negotiated for him by a broker. *Id.* at 1460. The court suggested that the insured's objections to the clause should be directed to his broker. *Id.*

Organ can point to no Alaska statute that specifically sets out the agency relation of insured and broker. However, AS 21.34.100(a) makes it the *broker's* responsibility to deliver "a complete record of all policy insuring agreements" to the insured. The broker is to make such delivery as soon as reasonably possible after placement of insurance. AS 21.34.100(d). Ribelin Lowell was hired by Organ. The court assumes Ribelin Lowell was seeking marine insurance to fit Organ's needs. There are no allegations Ribelin Lowell worked for or was the agent of British Marine. There is evidence that Ribelin Lowell was also made aware that Organ's coverage was subject to British Marine's Rules.[8] Applying *Weihtag*, the court concludes that Organ is bound by the arbitration clause.

This brings us to the role the Federal Arbitration Act plays in this matter. Section 3 of Title 9, United States Code, states that in a lawsuit brought upon any issue referable to arbitration under a written agreement for arbitration, the court, upon being satisfied that the issue involved in the suit is referable to arbitration, shall stay trial of the action until arbitration has been conducted in accordance with the terms of the agreement. Matters within admiralty jurisdiction are contemplated by the Federal Arbitration Act. 9 U.S.C. § 1. Marine insurance contracts are within admiralty jurisdiction. *See* discussion above. Therefore, this court is required by Section 3 to stay the proceedings in this matter and compel arbitration.

The McCarran–Ferguson Act does not contradict this result. The McCarran–Ferguson Act allows the states to regulate and tax the business of insurance. 15 U.S.C. § 1012(b); 2A *Couch on Insurance* § 21:45 at 362 (2d ed. 1984). A disputed claim is not the business of insurance. *Triton Lines v. Steamship Mutual Underwriting Ass'n*, 707 F.Supp. 277, 279 (S.D.Texas 1989). The Federal Arbitration Act does not affect the regulation of the business of

---

6. Attached as Exhibit A to British Marine's Opposition to Plaintiff's Motion to Remand (etc.), filed Dec. 20, 1991 (Clerk's Docket No. 23).

7. Dec. 23, 1991, Declaration of Francis Fyfe, filed Jan. 3, 1992 (Clerk's Docket No. 27).

8. *See* Declaration of Francis Fyfe.

insurance. *Bernstein v. Centaur Insurance Co.,* 606 F.Supp. 98, 101 (S.D.N.Y. 1984). It simply requires the federal courts to stay proceedings in cases where the parties have contractually agreed to arbitrate disputes. Further, Alaska law is not hostile towards arbitration. Arbitration agreements are valid and enforceable. AS 09.43.010. Alaska law provides for proceedings to compel arbitration upon a finding of an agreement to arbitrate. AS 09.-43.020(b). This court must stay further proceedings and compel arbitration.

Plaintiff argues that this result is unconscionable and against public policy. Unconscionability has been generally defined as the lack of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Farnsworth, *Contracts* § 4.28 at 314 (1982). There is no evidence that Organ lacked meaningful choice. There is no evidence that he did not freely become a member of British Marine. The fact that he, or his broker, did not fully investigate the terms applicable to British Marine members does not make the insurance contract unconscionable. Arbitration clauses are common to marine insurance involving associations. 1 Arnould, *Law of Marine Insurance and Average* § 134 at 88 (16th ed. 1981). Enforcement of the arbitration clause in this case, while it carries some burdens, is not unconscionable.

British Marine urges this court to dismiss the proceedings. It appears the court may, in its discretion, dismiss a case if it believes the plaintiff could not possibly win relief. *Sparling v. Hoffman Construction Co.,* 864 F.2d 635, 638 (9th Cir.1988). However, dismissal would appear to be premature in this case. Organ's motion to remand is denied. British Marine's motion to compel arbitration and for a of stay proceedings is granted.

Counsel for plaintiff shall confer with counsel for defendant and file a case status report on or before October 15, 1992.