Argued March 22, decided April 4; rehearing denied June 13, 1911.

## WINSLOW v. RUTHERFORD.

[114 Pac. 930.]

TRUSTS—CONSTRUCTION—AMBIGUITIES—ESTATE OF CESTUI QUE TRUST.
1. A deed recited that: "I in consideration of one dollar have bargained and sold and by these presents do bargain, sell and convey

unto W. as trustee for my son J., the following real property * * also the following mortgages," etc. The habendum read that the trustee was "to have and to hold the described property unto the said W. in trust for the use and benefit of the said son, J., until said son shall attain the age of 35 years, at which time the trust hereby created shall cease, and all the property hereby conveyed shall vest absolutely in him and be the property of said son." *Held,* that the deed was not ambiguous. the granting part creating a simple trust with the equitable estate in the son, which was not postponed by the habendum, and the son took a vested interest, and, on his death before arriving at the prescribed age, the trust ceased, and his estate passed to his heirs at law.

TRUSTS—CONSTRUCTION—VESTED INTEREST.

2. An interest should be construed to be vested, rather than contingent.

TRUSTS—CONSTRUCTION—SPENDTHRIFT TRUST.

3. A deed to the grantor's brother in simple trust for the grantor's son until he should arrive at the age of 35 years, when the son was to take the property absolutely, was not to be construed as a spendthrift trust.

TRUSTS—COMPENSATION OF TRUSTEE—DELAY IN TURNING OVER
    PROPERTY.

4. Where a trustee held property to pay the income to the grantor's son until he should attain the age of 35, and then the estate to vest absolutely in the son, and the trustee fulfilled the trust by proper care of the property and paying over income until the death of the son before attaining the prescribed age, he was not to be deprived of compensation because he failed to promptly turn over the estate to the son's administrator, in view of litigation over the *corpus* of the trust growing out of the construction of the trust conveyance.

From Marion:  GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by W. C. Winslow, administrator of the estate of James Edsall Rutherford, deceased, against W. A. Rutherford, for an accounting. The facts as disclosed at the trial are as follows:

In the year 1905 T. W. Rutherford made and executed a deed of the following purport:

"This indenture witnesseth: That I, T. W. Rutherford, of Salem, Oregon, for and in consideration of the sum of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, have bargained and sold and by these presents do bargain, sell, and convey unto W. A. Rutherford as trustee for my son, James Edsall Rutherford, the following described real property, to wit: * *

Also all my right, title and interest in and to the following described mortgages, to wit: * * Also all promissory notes held by me at this time, and all other personal property of every nature, kind and description which I now own or possess. To have and to hold the said above-described real and personal property, together with the appurtenances of said real property, unto the said W. A. Rutherford in trust for the use and benefit of my said son James Edsall Rutherford until my said son shall attain the age of thirty-five years, at which time the trust hereby created shall cease, and all property hereby conveyed shall vest absolutely in, and be the property of, my said son, James Edsall Rutherford."

The grantor died shortly after the execution of this conveyance. In August, 1908, James Edsall Rutherford, the *cestui que trust,* began a suit in equity against his trustee, alleging that he had secured large sums of money for which he had failed to account, and praying for an accounting and that he be let into possession of the trust property. Before the cause was at issue, plaintiff died, and W. C. Winslow, his administrator, being substituted for him, filed an amended complaint to which defendant answered, setting up, among other matters, that James Edsall Rutherford at the time the deed was executed was about 19 years old; that his father was a widower with no other child living; that, up to the time of the execution of the deed, James Edsall Rutherford had shown himself unable to take care of money or property and had given evidence of being a spendthrift; that T. W. Rutherford knew that the property would be wasted if he conveyed it directly to his son, giving him control and possession thereof, so made the conveyance to defendant with the intent that defendant should hold and manage the same for the benefit of James until he should reach the age of 35 years, believing that he then would have acquired sufficient business experience to take possession and management of the property. Defendant alleges that he took possession of the property, cared for it, collected

interest, rents, and profits accruing to the trust estate, paid taxes, expenses, and repairs, actively engaged in the duties of the trust, and supplied James with all the funds necessary for his support, education, and pleasure, according to the intention of the grantor in the trust deed. It is further claimed that, by the death of James before he reached the age of 35, the trust created by the deed ceased and determined, and that the defendant was entitled to hold the property for the heirs of the grantor. Plaintiff had a decree in the court below, and defendant appeals.

MODIFIED AND AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. William P. Lord* and *Mr. Isaac H. Van Winkle.*

For respondent there was a brief over the names of *Mr. Walter C. Winslow, Mr. John H. McNary* and *Mr. Charles L. McNary,* with oral arguments by *Mr. Winslow* and *Mr. John H. McNary.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The industry of counsel in this case has brought to our notice a mass of decisions bearing upon the construction of deeds of this character, where the language of the conveyance itself is doubtful or ambiguous. But, treated by those rules of construction, which for ages have been applied, we do not find any ambiguity in the conveyance before us, so far as it relates to the estate conveyed or the vesting of such estate, and therefore nothing that calls for extrinsic evidence to aid us in ascertaining the intent of the grantor. The words used, "do bargain, sell, and convey unto W. A. Rutherford, as trustee, for my son James Edsall Rutherford," taken by themselves, create a simple trust in favor of James, the trustee taking the legal estate, and the *cestui que trust* the equitable estate in the premises, and it is not disputed that the heirs

of James take the whole estate, unless such equitable estate is postponed by the language of the habendum.

We will now consider whether the language of the habendum can have the effect to defeat the vesting of the equitable estate in the *cestui que trust* at the time of the delivery of the deed. The habendum reads:

"To have and to hold the said above-described real and personal property, together with the appurtenances of said real property, unto the said W. A. Rutherford, in trust for the use and benefit of my said son James Edsall Rutherford until my said son shall attain the age of 35 years, at which time the trust hereby created shall cease, and all property hereby conveyed shall vest absolutely in, and be the property of my said son, James Edsall Rutherford."

2. It is a well-known rule of law that an interest shall be construed to be vested rather than contingent. We quote from one of the highest authorities:

"It is a well-known general rule that an interest shall be construed to be vested, rather than contingent. Or, to express the rule more precisely, that in doubtful cases an interest shall, if it possibly can consistently with other rules of law, be construed to be vested in the first instance, rather than contingent; but, if it cannot be construed as vested in the first instance that at least it shall be construed to become vested as early as possible." Smith, Exec. Int. § 200.

The conveyance in question has none of the *indicia* of a contingent estate. (1) There is no estate limited over in case the *cestui que trust* fails to reach the prescribed age. (2) There is no reversionary clause in favor of the grantor or his heirs. (3) There is no requirement that the trustee shall convey the legal title when the *cestui que trust* attains the prescribed age. The trustee is the mere holder of the legal estate which passes without further conveyance when the age limit is reached. While the absence of one or perhaps all of the matters above enumerated will not furnish conclusive proof of an inten-

tion of the grantor that the equitable estate shall not vest immediately in the *cestui que trust,* the absence of all of them certainly strongly negatives such intention.

Another canon of construction in cases of this kind is that if the grantor does not annex the time to the grant or gift itself, but merely to the payment,. possession, or enjoyment, or, in other words, if he first makes a grant or devise unconnected with any particular age and then by a distinct sentence or member of a sentence directs that the beneficiary be let into possession or enjoyment when he shall attain a given age, the grantor devise confers an interest immediately vested in right, but not to take effect in possession until the attainment of the age or period specified. Smith, Exec. Int. § 342. The author above referred to states the following as a general proposition:

"Where real or personal estate is devised or bequeathed to a person, and though the vesting in right or interest at first sight appears to depend upon the attainment of a given age or upon the arrival or occurrence of an event or time which is sure to happen or arrive, or, in the case of residuary bequest without any limitation over, upon marriage; yet, if the attainment of such age or the arrival or occurrence of such event or time does not form part of the original description of the devisee or legatee, and the suspensive expressions are of such a nature that they may be construed to refer, not to the vesting in right or interest, but to the vesting in possession or enjoyment, and it appears from the form of the limitation, when more closely considered, or from the intermediate disposition of the property, or from other passages, to be probable that it was only intended to delay the vesting in possession or enjoyment, in such case, the suspensive expressions will be referred to the vesting in possession or enjoyment, and the interest of the devisee or legatee will be actually vested in right before the age or period specified." Section 309.

A concrete example of the above rule is found in *Jackson* v. *Jackson,* 1 Ves. Sen. 217. In this case a father

Sig. 5

bequeathed £400 to his son to be paid to him at the end of one year after the testator's death, and a further sum of £100 to be paid at the death of his mother. The son died before the mother. The court held that he took a vested interest in the £100, stating that the legacy was plainly vested and the time of payment was postponed. To like effect is *Sydney* v. *Vaughan,* 3 Bro. Parl. Ca. 254; *Bolger* v. *Mackell,* 5 Ves. 509; *Provenchere's Appeal,* 67 Pa. 463; *Eldridge* v. *Eldridge,* 9 Cush. (Mass.) 516. So in the case at bar it is evident that it was the intent of the grantor to convey a present equitable estate but to postpone the enjoyment of the *corpus* until time and experience had rendered it probable that his son would preserve it. The deed is susceptible of no other reasonable construction.

3. It is claimed that this is a spendthrift trust, and that no equitable title passed to the *cestui que trust.* But to so hold we would in our judgment construe away the plain intent which we gather from the deed itself. In all the cases cited by counsel relating to spendthrift trusts we have not found one in which the ultimate title to the *corpus* of the trust in any event or at any age was to pass to the *cestui que trust,* and, while we are not prepared to say that in no instance can a spendthrift trust exist where the estate may finally vest in the *cestui que trust,* the rarity of such instances furnishes a strong presumption that a trust terminable at a particular date or upon the happening of a particular event is not a spendthrift trust. We do not think the words in the habendum, providing that, upon the beneficiary attaining the age of 35 years, the trust shall cease and all property conveyed vest absolutely in him, demonishes the equitable estate mentioned in the grant. Its effect was to limit the duration of the trust and to pass the whole legal title to the beneficiary without further conveyance, and was cumulative to the original grant. Based upon these considera-

tions, we hold, therefore, that upon the death of James Edsall Rutherford the trust ceased, and that his estate passed to his heirs at law subject to the rights of the administrator.

4. Another question which arises is upon the claim of the trustee for compensation. There is an allegation in the answer that he cared for the property, collected rents, paid taxes, and generally performed every act necessary for the proper protection of the trust estate. There is no allegation as to the value of such services, but it is evident from the testimony that they consumed much time and involved considerable responsibility and in his accounting he has made a claim for such compensation. It is urged that his failure to promptly turn over the estate to the administrator should deprive him of the right to claim compensation. But, in view of the fact that able counsel have differed as to the proper construction of the conveyance at bar, we think that perhaps it was only prudence on his part to await the judgment of the court before parting with the possession of the property of the estate. There is nothing in these proceedings to indicate bad faith or misapplication of funds on the part of the trustee. That he did not supply his *cestui que trust* with money more munificently was probably better for him, and was certainly better for his heirs, under all the circumstances. We will allow the trustee compensation for his services to the extent of $1,000, and his costs in this court.

The decree of the lower court as above modified will be affirmed.          MODIFIED: REHEARING DENIED.

Mr. Justice BURNETT took no part herein.