Argued December 6, 1973, affirmed January 31, 1974

# BROWNING, *Appellant, v.* SACRISON, *Respondent.*

518 P2d 656

*Harold A. Fabre,* Pendleton, argued the cause for appellant. With him on the briefs were Fabre & Ehlers, Pendleton.

*Scott M. Kelley,* Portland, argued the cause for respondent. With him on the brief were Leo Levenson and Mize, Kriesien, Fewless, Cheney & Kelley, Portland.

O'CONNELL, C. J.

This is a suit in which plaintiff seeks to have a provision in the will of Kate Webb construed. The question presented is whether the remainder devised to plaintiff's husband, Franklin Browning, now deceased, and his brother, Robert Sacrison, the defendant, was vested or contingent at the time of Mrs. Webb's death. The trial court found the remainder to be contingent. Plaintiff appeals.

Kate Webb was the maternal grandmother of Franklin Browning and Robert Sacrison. Her will, executed in 1943 when Franklin was 20 and Robert 13, contained the following provision (paragraph III):

"I give and devise to my daughter, Ada W. Sacrison, a life estate for the term of her natural life in and to all real property belonging to me at the time of my death, excepting only the residence property at Pilot Rock described in paragraph II of this will, with remainder over at the death of the said Ada W. Sacrison, share and share alike, to my grandsons, Francis Marion Browning[1] and Robert Stanley Browning,[2] or, if either of them be dead,

---

[1] Francis Marion Browning is the same person as Franklin M. Browning.

[2] Robert Stanley Browning is the same person as Robert Stanley Sacrison.

then all to the other, subject to a like condition as to the use of the same or any portion of the proceeds thereof for Clyde Browning, as mentioned in paragraph II of this my last will.[8]" (Footnotes added.)

Kate Webb died in 1954. She was survived by her daughter, Ada, and grandchildren Franklin and Robert. At the time of her death, Mrs. Webb owned 960 acres of farmland in Umatilla County. This is the land devised by paragraph III of the will. Franklin died in 1972 without issue. He did not survive the life tenant Ada, who is still alive.

Plaintiff takes the position that the language in paragraph III of the will, creating an interest in the two grandsons "or, if either of them be dead, then all to the other" refers to the death of the testatrix not the death of their mother Ada, the life tenant. Thus, she argues the estate vested at the time of Mrs. Webb's death.

Conversely, defendant contends that the grandsons each took a remainder contingent upon surviving the life tenant.

Plaintiff relies upon the constructional preference favoring the early vesting of estates. It cannot be denied that there is considerable case support, including our own cases, for the view that the law favors the early vesting of estates.[9] And it is clear that at an

---

[8] This condition was "that no portion of the property or proceeds thereof shall ever go to or be used for the benefit of their father, Clyde Browning." For further discussion of the effect of this condition see *infra.*

[9] Dean et al v. First Nat'l. Bank et al, 217 Or 340, 341 P2d 512 (1959); Williamson v. Denison and Groves, 185 Or 249, 202 P2d 477 (1947); Stein v. U. S. National Bank, 165 Or 518, 108 P2d 1016 (1941); Stevens v. Carroll, 64 Or 417, 129 P 1044 (1913); Winslow v. Rutherford, 59 Or 124, 114 P 930 (1911).

earlier day the rule was widely, if not universally accepted.[5] The policy reason for this preference is that it "quickens commerce in the ownership of property by facilitating alienability to a considerable degree."[6] But with the passage of time the rule was eroded by exceptions and by a closer analysis of the rationale for the early vesting preference, until today that constructional preference probably no longer represents the prevailing view.[7] The most severe criticism of the constructional preference for vesting is found in V American Law of Property, § 21.3 at 130 (Casner ed. 1952), where it is said:

> "The preference for vested interests undoubtedly originated in connection with conveyances of interests in land and at a time in feudal England when contingent interests in land had not attained a dignified statute. Under such conditions, it may be reasonable to attribute to a transferor the intention to give the transferee an estate of recognized quality. Today, however, unfortunate tax consequences may follow a determination that an interest is vested and most transferors who consider all the consequences which attach to a vested interest are inclined to postpone vesting until the time set for enjoyment of the interest in possession. Thus con-

[5] Thompson on Wills, § 362 at 547-49 (3d ed 1947).

[6] Dean et al v. First Nat'l. Bank et al, 217 Or 340 at 361, 341 P2d 512 (1959).

[7] "It is the peculiar genius of the common law that rarely is an outmoded rule suddenly repudiated. Usually, it is gradually eroded by exceptions that ultimately form a new rule; what remains of the old rule becomes the exception. Most of the exceptions to the rule favoring the vesting of estates have not been explicitly recognized as such. Nevertheless, exceptions exist and are becoming more common." Rabin, The Law Favors the Vesting of Estates. Why?, 65 Colum L Rev 467, 473 (1965).

tinued adherence to this preference in modern times is at least of doubtful validity in many situations."⑧

The foregoing critique has in turn been criticized for being a "harsh, unbalanced assessment of the rule, * * * as unfortunate as the more common tendency to accept the rule uncritically."⑨ Thus a middle position has evolved which urges that "what is needed is a more discriminating evaluation rather than outright rejection of the rule."⑩

■ We adopt this latter approach. It is true that the reasons which prompted the creation of the rule favoring early vesting no longer obtain. Nevertheless, early vesting still may be desirable for other reasons which have application today.⑪ On the other hand, the factors supporting early vesting must compete against other factors favoring the postponement of vesting. All of the factors "must be given their respective weights in the

---

⑧ "* * * It is time that our legal thinkers and courts do some hard thinking as to why there should be a constructional preference for early vesting and early indefeasability." 2 Powell on Real Property, § 318 at 716 (Rev. ed. 1973). See also Morris & Leach, The Rule Against Perpetuities 40, n.6 (2d ed. 1962).

⑨ Rabin, *supra* note 7 at 479.

⑩ *Ibid.*

⑪ "* * * Nevertheless the early vesting of interests is still regarded as very desirable from the viewpoint of public interest. Construing an interest as vested may reduce the number of persons having interests in the affected thing and thus makes it easier to secure a conveyance of the ownership of such thing. Also such construction tends to reduce the uncertainties as to the created interest and hence results in a readier market for it. Thus earlier vesting still facilitates alienability to a considerable degree. Furthermore the rule against perpetuities operates more destructively as to interests subject to a condition precedent than as to interests vested subject to complete defeasance." 3 Restatement, Property, § 243 at 1217-18 (1940). Dean et al v. First Nat'l. Bank et al, 217 Or 340, 341 P2d 512 (1959).

ultimate determination of the judicially ascertained intent of the conveyor."[12]

■ In the present case, competing with the constructional preference for early vesting is the preference for that construction which conforms more closely to the intent commonly prevalent among conveyors similarly situated than does any other possible construction.[13] In modern law it is felt that when a devise is made to a life tenant with a remainder conditioned upon an ambiguous form of survivorship, the intent "commonly prevalent among conveyors similarly situated"[14] is deemed to require that the remainderman survive the life tenant rather than the testator.[15] The application of this constructional preference would make Franklin's interest subject to the condition that he survive his mother Ada, as the trial court held.

The trial court based its decision in part upon a comparison of the language in other parts of the will with the language in paragraph III. For example, paragraph II provided as follows:

"I give and devise to my grandsons, Francis Marion Browning and Robert Stanley Browning, share and share alike, the real property owned by me in the Town of Pilot Rock, in Umatilla County, Oregon, subject to the condition that no portion of said property or the proceeds thereof shall ever go to or be used for the benefit of their father, Clyde Browning, and if either of said grandchildren be not living at the time of my death, then the other

---

[12] 3 Restatement, Property, § 243 at 1209 (1940).

[13] 3 Restatement, Property, § 243 at 1208 (1940).

[14] Ibid.

[15] Cf., 3 Restatement, Property § 264 (1940); Rabin, *supra* note 7 at 473.

shall take all of such property, subject to said condition."

In this paragraph the testatrix expressly designates that the time for vesting of the Pilot Rock property in the survivor shall be "at the time of my death." The trial court reasoned that "it must be assumed that when these specific words were not used [in paragraph III] after the estate of Ada Sacrison, but the words, 'or, if either of them be dead, then to the other,' the testatrix intended that the interest became vested at the time of the death of the life tenant, and not at the date of her death."

The principle employed by the trial court is well recognized as one of the canons of construction.[10] However, it loses some of its force here because the disposition in paragraph II, being directly to the devisees or the survivor without the intervention of a life estate, would necessarily have to vest, if it were going to vest at all, upon the death of the testatrix and therefore the survivorship provision could not relate to any other person's death insofar as it affected the vesting of the estate.[11] This factor, standing alone, therefore would not justify the trial court's decision.

■ The trial court did, however, point to another factor which we think is more significant in ascertaining the testatrix's intent. The trial court noted that "all provisions of the will specifically excluded Clyde Browning from sharing in any interest in the estate." The court then concluded that "[i]f the construction propounded by the plaintiff were to be followed, the

[10] See Thompson, supra note 5, §§ 214-216 at 330-335; Odgers', Construction of Deeds and Statutes 55-58 (5th ed 1967).

[11] Odgers', supra note 16 at 91.

grandsons of Kate Webb would have had a vested transferable interest at the death of Kate Webb, and had they died intestate without issue prior to the death of the life tenant, their father, Claude (sic) Browning would have shared in his interest to the estate of Kate Webb as an heir of his child, contrary to the testatrix' specific wishes."

To strengthen this conclusion, the trial court could have pointed out that at the time the will was executed in 1943 Robert was only 13, Franklin was 20, and neither of them was married. (Indeed, neither had married by 1954 when the testatrix died.) There was, then, at least in the case of Robert, a rather long period of time during which a beneficiary might die intestate and before marriage and/or the birth of issue could divert the estate from vesting in whole or in part in Clyde Browning. It must be noted, of course, that even if the estate is regarded as vesting only upon the death of Ada, the life tenant, the survivor who outlived Ada might not have married or had issue, in which case Clyde would share in the estate upon his son's death. Moreover, if a grandson did have issue and predeceased the life tenant, treating the vesting event as the death of Ada would result in the disinheritance of the grandson's issue. However, we can only indulge in assumptions as to her possible objectives. We think that the assumption made by the trial court, supported by the preference for the construction which more closely conforms to the intent commonly prevalent among testators similarly situated, is the most reasonable.

The decree of the trial court is affirmed.