Argued December 19, 1975, affirmed January 26, reconsideration denied
March 3, petition for review denied April 13, 1976

In the Matter of the Estate of Neva Sims,
aka Neva C. Sims, Deceased.

TAYLOR et al, *Appellants,*

*v.*

SIMS, *Respondent.*

(No. 12484, CA 4690)

544 P2d 1063

*John R. Bakkensen,* Portland, argued the cause for appellants. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener and Conrad L. Moore, Portland.

*Robert T. Scott,* Albany, argued the cause for respondent. With him on the brief were Scott and Norman, Albany.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

Appellants filed an objection to the final account and decree of distribution of the estate of Neva Sims, contending that the personal representative had misconstrued the will. They appeal now from the probate court's Order Settling Estate and Decree of Distribution in which it determined that the personal representative's interpretation was correct. We review de novo.

The particular question raised is what interest was given to Neva Sims' husband by the first part of paragraph III.

The following portions of the will are relevant:

"II.

"I do herewith recite that I have no children and that I am married to Homer D. Sims and being ever mindful of my said beloved husband and of my next of kin and of the nature and extent of my estate, I do give, devise and bequeath all of my said estate in manner hereinafter set forth.

"III.

"I do herewith declare that I have certain benefits due me under the Will of my late father, Henry B. Taylor, otherwise known as Ben Taylor, Deceased, consisting of two certain notes commonly known as the Ben Taylor Note and the Taylor Estate Note. Unto my said husband, Homer D. Sims, I give a life estate to the income from and the payments on said notes, and both of them, and the remainder unto DONNA MARIE TAYLOR, my sister-in-law, provided she survive my said husband, Homer D. Sims.

"If my said sister-in-law, DONNA MARIE TAYLOR, not survive me and my said husband, Homer D. Sims, then the remainder of said notes and each of them, unto her children, my niece, LINDA FUNK, of Portland, Oregon and my nephew, JAMES B. TAYLOR, of Gresham, Oregon, equally, share and share alike.

"To my husband, HOMER D. SIMS, of Lebanon, Oregon, I do hereby give, devise and bequeath the rest, residue and remainder of my estate of whatsoever

[ 209 ]

nature and wheresoever situate provided he shall survive me.

"In the event, however, that my said husband shall predecease me or in the event of our deaths taking place simultaneously or in such manner or at such time and place as it cannot be readily ascertained which died first, then and in such event, it is my Will and I hereby give, devise and bequeath, all the rest, residue and remainder of my estate unto my said sister-in-law, DONNA MARIE TAYLOR, provided that she shall survive me and if she not survive me, then unto my niece, LINDA FUNK and my nephew, JAMES B. TAYLOR, equally, share and share alike.

The primary issue here is what interest testatrix gave to her husband by the phrase "a life estate to the income from and the payments on said notes." Appellants contend that testatrix gave her husband a life estate in the payments on the notes so that he is to receive as his own property only income derived from investing those payments. The payments themselves would be accumulated and held until his death when they would pass to the remainderman. Respondent contends that the testator intended that he receive as his own property all payments on the notes made or due during his lifetime, with the remainderman to take only what payments, if any, were not paid or due at the time of his death.

At the time of the inventory filed by the personal representative one of the notes had a balance due of $112,811.78, payable at the rate of $5,333 per year, and with the final payment due on or before December 1, 1981. Donna Marie Taylor, one of the appellants, is an obligor on this note. She is divorced from testatrix' brother, who is the other obligor. The second note, in which decedent owned a half interest, had a balance due to her of $20,700.42, payable at the rate of $4,000 per year, and with the final payment due on or before December 1, 1984.

In their first assignment of error appellants assert that the will was not ambiguous so that testimony of

the attorney as to the testamentary intent of the testatrix should not have been received.

The primary purpose of interpreting a will is to ascertain the intent of the testator. Extrinsic evidence may be used to aid this process or to explain an ambiguity. *Putnam v. Jenkins,* 204 Or 691, 705, 285 P2d 532 (1955); *Fields v. Fields,* 139 Or 41, 45, 3 P2d 771, 7 P2d 975 (1932). However, direct statements by the testator of his intent are admissible only to determine which person or object the testator meant when language in the will refers equally to two or more persons or objects. *Soules v. Silver,* 118 Or 96, 104, 245 P 1069 (1926); 4 Page, Wills § 32.9 (Bowe-Parker rev 1961).

The above quoted phrase of the will in question is ambiguous. It is not clear from the phrasing used in the will whether testatrix intended to give her husband an estate for life in the income and payments themselves, appellants' view, or whether she intended to give him an estate for life in the notes, thus giving him a right for life to the income from and payments on the notes. Evidence of the surrounding circumstances was properly admitted.

The second assignment of error challenges the correctness of the probate court's resolution of the ambiguity noted above. The probate court found that the intent of the decedent as expressed in her will was to give her husband the right to receive as his own property all payments on the notes made or falling due during his lifetime. The court pointed out that if the testatrix had intended that respondent receive only the income from the investment of those payments, her will would have contained detailed and complex provisions including limitations on types of investments which could be made.

This reasoning is persuasive. We also note the general scheme which appears in testatrix' will in which she provides first for her husband, and then, after his

death, for her sister-in-law, niece, and nephew. The scheme is a simple one. We agree with probate court that if she had intended a complex trust arrangement she would have given more indication of such intent.

We find that by "life estate to the income from and the payments on the notes" the testatrix meant a life estate *in* the notes and a right for life *to* the income from and payments on them. This interpretation is supported by her use of the phrase "remainder of said notes" in the gift over to her niece and nephew in the following paragraph. This phrase indicates that the life estate was in the notes and not just in the income.

The general circumstances of the testatrix at the time she made her will also support this interpretation. As noted above, her general scheme was to provide for her husband during his lifetime. The value of her total estate was $138,999.41; the value after subtracting the notes was $5,487.21, approximately half of which was in horses and half in cash. There would be little left for her husband if appellants' interpretation is adopted.

We conclude that the testatrix intended to give respondent, her husband, a life estate in the notes, giving him a right to all payments made or due during his lifetime. This result is in accord with the constructional preference that wills be interpreted to conform most closely to what most similarly situated testators would intend. *Browning v. Sacrison,* 267 Or 645, 650-52, 518 P2d 656 (1974).

There remains questions of the respective rights of the life tenant and the remainderman in the notes and the payments. The notes are a wasting asset since their principal value diminishes after payments are made. The general rule concerning a life estate in a wasting asset is that if it is given as a specific gift, the life tenant is entitled to the entire net income; if it is given as a general gift or legacy, or as a part of the residue of an estate, then the asset should be sold, the

[ 212 ]

money invested, and the income paid to the life tenant during his tenancy. 5 Page, Wills § 39.7 (Bowe-Parker rev 1961).

The devise of the life estate in this case is a specific devise. ORS 111.005(30). Under the general rule, the payments made or due during the husband's life belong to him as his own property.

Affirmed.