# THE ESTATE OF ETHEL LEONA McGEE
*v.*
## DEPARTMENT OF REVENUE

Wendell Gronso, Burns, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered December 16, 1977.

CARLISLE B. ROBERTS, Judge.

The plaintiff has appealed from defendant's Order No. IH 77-5, dated June 28, 1977. In that order the defendant determined that plaintiff owed additional inheritance taxes in the sum of $7,890.51, based upon defendant's findings (a) that the remainder interest of the decedent, Ethel Leona McGee, in a testamentary trust created by her deceased father's will was vested

and therefore taxable and (b) that the estate's claim of farm use values under ORS 118.155 must be disallowed because the agricultural zone described in the Harney County Zoning Ordinance of 1971 did not meet the statutory requirements of an exclusive farm use zone pursuant to ORS 308.370, 215.203 and 215.213.

The decedent's father, Walter Withers, signed his will in April 1966 and died testate in 1970. The pertinent parts of his will read:

"THIRD: I devise and bequeath unto my said wife, EDNA G. WITHERS, if she survives me, an amount equal to fifty percent (50%) of the value of my adjusted gross estate * * *.

"FOURTH: If my wife shall survive me, I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal or mixed, and wheresoever the same may be situated, to my daughter, ETHEL LEONA McGEE, IN TRUST NEVERTHELESS, to hold, manage and distribute as hereinafter set forth.

"1. The principal and income of the trust estate shall be distributed as follows:

"(a). After paying or reserving sufficient money to pay any expenses of management * * *, all income from the trust estate * * * shall be distributed to or for the use and benefit of my wife, EDNA G. WITHERS, during her lifetime. * * *

"(b). If the trustee deems the net income payable hereunder not sufficient * * *, my trustee may apply to the appropriate Court for an order authorizing my trustee to apply for the use and benefit of my wife such additional part, up to and including the whole thereof, of principal of the trust estate as shall be deemed necessary.

"2. Upon the death of my wife, or upon distribution of my estate if she should predecease such event, the trustee shall apportion the trust estate, * * * into two equal shares as follows:

"(A). One share for my grandson, GARY EARL McGEE, to the UNITED STATES NATIONAL BANK OF OREGON, Burns, Oregon, IN TRUST NEVERTHE-LESS, * * *.

"* * * * *

[ 290 ]

"(B). The remaining one share to my daughter, ETHEL LEONA McGEE. Should my daughter, ETHEL LEONA McGEE, fail to survive me, then I direct that her share shall become part of the trust hereinabove created for my grandson, GARY EARL McGEE, to be administered and distributed on the same terms and conditions as herein set forth."

If Ethel had a vested interest in her father's estate, it would pass, under her will, to "that certain Trust known as the Withers-McGee Trust created on the 21 day of November, 1975, and naming JACK McGEE as Trustee." In her will, Mrs. McGee named herself as the wife of Jack McGee and stated that the two were parents of the son, Gary.

The defendant, in support of its order, contends that the decedent, Ethel McGee, having survived her father, had a vested interest in his estate at the time of her death, (a) even though she predeceased the life tenant and (b) regardless of the power of the trustee to invade the principal of the trust estate for the benefit of the life tenant, if deemed necessary by the trustee and approved by court order.

The plaintiff contends that Ethel McGee's interest was contingent because of the provision in Mr. Withers' will, allowing the trustee to invade the principal of the trust on behalf of Mrs. Withers, and that the language of Mr. Withers' will indicates the testator's intent that, upon Ethel's death, the interest should go to her son, a situation described by the plaintiff as a "lapsed legacy," citing ORS 112.395. Plaintiff argues that this intention of the testator is shown by his omission of the name of the son-in-law, Jack McGee, in Mr. Withers' will; Jack could not have been an intended beneficiary (as he would become if Ethel's interest vested). Plaintiff also contends that the "spendthrift provisions" in Mr. Withers' will prevent vesting so long as the testator's wife, Edna, lived.

■■ Whether a remainder is contingent or vested is an old and difficult problem. Courts have always

sought to carry out the testator's intent, if lawful. And, for a long period, courts have held that, in case of doubt, the presumption should favor vesting. *Stevens v. Carroll. In re Stevens,* 64 Or 417, 129 P 1044 (1913); *Winslow v. Rutherford,* 59 Or 124, 114 P 930 (1911). If the gift is vested, it does not fail upon death of the beneficiary prior to the period of distribution. *Stevens v. Carroll, supra.*

■ "Vesting" occurs when the gift is made to an ascertained person, subject to no condition other than determination of a precedent estate. *Stevens v. Carroll, supra; Warren v. Hembree,* 8 Or 118 (1879).

■ In *Stevens v. Carroll, supra,* where a testator devised all his real property to his wife for life, directing that part of it should be sold at her death and out of the proceeds a legacy should be paid to his daughter, the interest of the daughter in the legacy vested at the death of the testator and her death prior to that of the widow did not cause a lapse of her legacy (which was thus enforceable in favor of her heirs). The court held that if payment is postponed for no reason personal to or in the interest of the legatee, but solely for the benefit of the widow's life estate, the remainder is vested.

■■ *Hawkins & Roberts v. Jerman,* 147 Or 657, 35 P2d 248 (1934), contains an example of a clearly contingent remainder. After the death of the testator's widow (to whom a life estate was granted), there was a remainder over to the daughter, Lela Jerman, to be held and enjoyed in the period of her natural life "and upon her death, to descend to the heirs of her body only." Since heirs could only be determined upon the death of Lela, no estate of inheritance existed before Lela's death; *i.e.,* a contingent remainder. The court remarked that "a remainder which is certain as to the owner and absolute as to his estate or interest is a vested remainder." If it is clear that the interests are not intended to vest until distribution is made, as construed from a reading of the whole instrument, the

court will sustain the testator's intent as against the rule favoring vesting. *Stein v. U. S. National Bank,* 165 Or 518, 108 P2d 1016 (1941).

*Morse et al v. Paulson et al,* 182 Or 111, 186 P2d 394 (1947), is a case in which the will created a trust, giving a life estate to the widow of the testator and then the income to testator's son and daughter until a date certain, and then over to the son and daughter. The son died before the date certain was reached. The decision holds that the son had only a contingent interest in the principal, inasmuch as the testator's intent, as shown by the language "had he [the son] lived to become entitled to an interest in my estate," and, in another place, referring to the interest "my said son would have received," clearly indicated that the time of distribution of the trust was determinative as to who would take.

■■ *Williamson v. Denison and Groves,* 185 Or 249, 202 P2d 477 (1949), stands for the proposition that a vested interest is to be preferred over the possibility of contingency and, if the interest is contingent, it should be interpreted to vest as soon as possible. Most importantly, it holds that the power of the trustee to invade principal for the benefit of a life estate does not void the possibility of a vested interest in a remainder, contrary to plaintiff's contention.

In the *Williamson* case, *supra,* the residual estate was to be held in trust for the period of the successive lives of the testator's widow and of his daughter, with power in the trustee to invade the principal on behalf of each of the successive income beneficiaries. After the deaths of the wife and the daughter, the estate was to be divided into equal shares, one each to grand-daughter B and to granddaughter M. The testator died January 1, 1929, and his widow died September 16, 1938. Granddaughter M died intestate January 19, 1944, leaving a spouse. The daughter of the taxpayer died February 15, 1947. The question then presented was whether M's spouse had an interest in the estate

or whether granddaughter B was entitled to the whole thereof. The representative of B argued that M's spouse could not take inasmuch as M had only a contingent remainder growing out of the fact that the trustee could invade the principal for the prior life beneficiaries. The court pointed out that this was not the test of a vested remainder since the valuation of the estate distributable at a given time (which is the question posed by the possibility of invasion of principal) can be and often is indefinite up to the time of distribution. Hence there was a vested interest in granddaughter M which was inherited by M's spouse. (The case of *Morse v. Paulson, supra,* is distinguished, since the will in that case postponed vesting until the time for distribution of the trust.)

█ A study of the effect of the invasion of the trust principal for the life tenant is found in 131 ALR 713, 715, Part III, a, 1 (1941), and this also concludes that the possibility that there may be nothing left to the remaindermen does not make the remainder a contingent one, but leaves it vested, subject to defeasance by the exercise of the power.

█ █ In the more recent case of *Browning v. Sacrison,* 267 Or 645, 518 P2d 656 (1974), the court modified the view that the law favors the early vesting of estates. However, the rule was not rejected outright. As stated, 267 Or at 649-650, 518 P2d at 658-659:

"* * * It is true that the reasons which prompted the creation of the rule favoring early vesting no longer obtain. Nevertheless, early vesting still may be desirable for other reasons which have application today. On the other hand, the factors supporting early vesting must compete against other factors favoring the postponement of vesting. All of the factors 'must be given their respective weights in the ultimate determination of the judicially ascertained intent of the conveyor.' " [Footnotes omitted.]

The court indicates (267 Or at 650, 518 P2d at 659) that today's preference is "for that construction which conforms more closely to the intent commonly preva-

lent among conveyors similarly situated than does any other possible construction \* \* \*," citing 3 Restatement, Property, § 243 at 1208 (1940).

From the foregoing it will be seen that plaintiff's contention that a contingent remainder must be found if a life estate can invade the principal of the trust is not supported by the authority.

Plaintiff's reliance on ORS 112.395, the "antilapse statute," is misplaced, since the daughter, Ethel, survived the testator.

The intention of Mr. Withers to prevent his son-in-law's enjoyment of the use or benefit of the property is not to be found in Mr. Withers' will nor in the parties' stipulation of facts and is therefore disregarded. (The court in *Browning, supra,* 267 Or at 652, 518 P2d at 660, noted the possible difficulty of carrying out the testator's *expressed* intent in that case to exclude the father of the grandchildren.) The court cannot accept the *assumptions* urged by plaintiff on this point. It notes that the testator had provided that if Gary died before the age of 30 years, without surviving issue, his interest is to be distributed to Ethel, and there is no suggestion of excluding benefits to Jack McGee upon her death.

The plaintiff's brief refers to the provisions of Mr. Withers' will excluding creditors of devisees, page 5, paragraph b (Pl Ex 1), which states:

"b. The interest of any beneficiary in the principal or income of these trusts shall not be subject to the claims of his or her creditors, or others, or liable to attachment, execution, or other process of law, and no beneficiary shall have any right to encumber, hypothecate or alienate his or her interests in these trusts in any manner. The trustee may, however, deposit in any bank designated in writing by a beneficiary to his or her credit, income or principal payable to such beneficiary."

Plaintiff concludes from this: "Therefore, it would appear that nothing could have vested in the decedent [Ethel] as long as her mother [Edna] was alive which

she still is, See Am Jur 2nd Trust 152." (Pl Br, 5-6.) The citation is not in point for the purposes of this suit and plaintiff's conclusions are not supported thereby.

The court finds that a vested interest in the designated portion of the trust principal was created upon the death of Mr. Withers for the benefit of Ethel, with enjoyment postponed throughout the life of Mrs. Withers. The language, read with the rest of the will, is clear: "The remaining one share to my daughter, ETHEL LEONA McGEE." The beneficiary is certain, the gift is specific, the time is precisely ascertainable (in due course). The only limitation found in the will is not applicable; *i.e.,* "[s]hould my daughter, ETHEL LEONA McGEE, *fail* to *survive me* [the testator, Mr. Withers] * * *." (Emphasis supplied.) Ethel did survive her father.

The second issue relates to the value to be placed upon certain farmland included within the decedent's estate.

ORS 118.155, first enacted in Or Laws 1973, ch 503, § 13, and amended in Or Laws 1975, ch 762, § 5, provides:

> "Interests in real property passing by reason of death that had received special assessment as farm use land under subsection (1) of ORS 308.370 shall be valued at its value for farm use determined by the assessor under subsection (1) of ORS 308.370 as of January 1 of the year of the death of the decedent."

ORS 308.370(1) applies only to land which is within a farm use zone and which is used exclusively for farm use as specified in ORS 215.203. ORS 215.203 provides:

> "* * * Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213. * * *"

ORS 215.213(1) specifies that:

> "(1) The following nonfarm uses may be established

in any area zoned under ORS 215.010 to 215.190 and 215.402 to 215.422 for farm use:

"(a) Public or private schools.

"(b) Churches.

"(c) The propagation or harvesting of a forest product.

"(d) Utility facilities necessary for public service, except commercial facilities for the purpose of generating power for public use by sale.

"(e) The dwellings and other buildings customarily provided in conjunction with farm use, * * *.

"(f) Operations for the exploration of geothermal resources * * *."

ORS 215.213(2) particularly provides:

"(2) The following nonfarm uses may be established, subject to the approval of the governing body of the county, in any area zoned * * * for farm use:

"(a) Commercial activities that are in conjunction with farm use.

"(b) Operations conducted for the mining and processing of geothermal resources * * *.

"(c) Private parks, playgrounds, hunting and fishing preserves and campgrounds.

"(d) Parks, playgrounds or community centers * * *.

"(e) Golf courses.

"(f) Commercial utility facilities for the purpose of generating power for public use by sale.

"(g) Personal-use airports for airplanes and helicopter pads, * * *."

Subsection (3) of ORS 215.213 provides for the installation in a farm use zone of single-family residential dwellings, not provided in conjunction with farm use, subject to a number of restrictions, and only with the approval of the governing body of the county.

The department, in its written opinion (*see* exhibit with Complaint) concluded that an examination of the Harney County ordinance shows that the uses permitted outright in the county's A-1 zone came within the requirements of ORS 215.213, "but the conditional

uses permitted do greatly exceed those permitted in ORS 215.213. * * *"

Although the Harney County zoning regulations as provided by an ordinance adopted by the county court on October 20, 1971 (Pl Ex 3), states that "[i]t is intended that land within the agricultural zone [zone A-1] be used exclusively for farm use as the term is defined in this ordinance * * *" it continues:

"(2) *Conditional Uses Permitted.* In an A-1 zone, the following uses and their accessory uses are permitted when authorized in accordance with the requirements of Article 2.

"(a) Commercial airports and airfields.

(b) Hospital, nursing or retirement home.

(c) Kennel or animal hospital.

(d) Public use or building other than those allowed as an outright use.

(e) Residential and recreational subdivisions, including but not limited to nonfarm single family dwelling and two family dwellings, including a mobile home on an individual lot(s).

(f) Mobile home park.

(g) Mining, quarrying, thermo-development, oil/or gas drilling or other extraction activity, including the processing or refining of ore or other raw material.

(h) Commercial or industrial activity directly serving farm operations, including the preparation and storage of farm products.

(i) Commercial livestock feeding yard.

(j) Commercial auction sales yard.

(k) Garbage dump or other solid waste disposal site and junk yards.

(l) Outdoor advertising signs permitted by ORS Chapter 377; provided however, that such signs may not be erected or maintained within 100 feet of an occupied dwelling without the written consent of the owner of the property.

(m) Recreational areas.

(n) Storage and disposal of chemical products, chemical wastes or radio active wastes.

(o) Slaughter houses.

(p) Power generating plants.

(q) All other uses not permitted outright."

Clearly, these conditional uses go beyond the scope, spirit and intent of ORS 215.213.

The defendant's opinion, at 3, then continues:

"* * * Petitioner argues the procedures to obtain a conditional use are as strict or the same as those to obtain a zone change so that the words 'conditional uses' in the ordinance is [sic] a misnomer and the ordinance actually permits no conditional uses. A zone is created by a legislative judgment of public need for various uses of property. A zone change is a complete deviation from that legislative judgment. The granting of a conditional use is not a deviation from the ordinance, but is in compliance with it. *Kristensen v. City of Eugene Planning Commission,* 24 Or App 131, 544 P2d 591, 593 (1976). Regardless of the application procedures necessary to the granting of a conditional use, it remains just that, a conditional use granted by ordinance. It does not constitute a zone change. The zone remains the same, but includes a conditional use not contemplated or permitted by ORS 215.213."

The defendant also cites *State ex rel. Skelly Oil Co. v. Common Coun., Delafield,* 58 Wis2d 695, 701, 207 NW2d 585, 587 (1973), and 82 Am Jur2d *Zoning and Planning,* § 255, defining "variance" and "conditional use."

█ Plaintiff argues that ORS 308.403 leaves it to the individual district attorney to determine if the ordinance is a qualified farm use zone and shows that the District Attorney of Harney County has approved the Harney County ordinance as being in compliance, and plaintiff concludes that the Department of Revenue is bound by this ruling. Without answering that conclusion, it is clear that the court is not bound by the district attorney's legal conclusion.

█ █ The defendant's arguments are the more persuasive. A conditional use and a zone change are substantially dissimilar in purpose, nor are they made

the same because the same procedures are required to effect a change. A departure in the county's ordinance, permitting uses foreign to those authorized by the legislature, in derogation of the chief legislative intention to create a zone of *farm use lands,* cannot be encouraged or approved. Since the ordinance does not come within the requirements of ORS 215.213, it cannot be included in ORS 308.370(1) and ORS 118.155.

The defendant's Order No. IH 77-5 is affirmed and the Estate of Ethel Leona McGee shall pay the inheritance tax deficiency as required by statute and the defendant's order.

No costs to either party.