# IN THE OREGON TAX COURT

## JONES et al
### *v.*
## DEPARTMENT OF REVENUE
### (TC 1876)

Greg Terranova, Attorney at Law, Portland, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered July 11, 1983.

### SAMUEL B. STEWART, Judge.

Plaintiffs have appealed from defendant's Opinion and Order No. IH 82-1 by filing a complaint in this court. Subsequently, the defendant filed an answer and, in the interim, the parties filed a stipulation reducing the matter at issue to a single question of law upon which briefs have been filed.

The stipulated facts are that a trustor created a revocable trust; the trustee was directed to pay income and principal to the trustor for life; after trustor's death, to pay the net income of the trust to the trustor's wife for life; upon the death of the survivor of the trustor and his wife, to distribute

the trust to a niece, her husband and their five children, plaintiffs herein.

The sole issue facing the court is the determination of whether the remainder interests are "vested" or "contingent."

Trustor died on March 11, 1977, survived by his wife and plaintiffs. At the time of trustor's death, ORS 118.100(2) and (3) imposed a collateral tax, in addition to the basic inheritance tax, designed to take advantage of the credit allowed against the federal estate tax for state death taxes. The personal representative computed the collateral tax upon the remainder interests in the trust assets and paid the tax. Plaintiffs sought a refund of the tax, alleging that their remainder interests were not "sufficiently ripe" to be taxed under ORS 118.100(2) and (3) at trustor's death because the remainder interests were contingent upon plaintiffs surviving trustor's widow and the interest of the niece's husband was subject to the condition that he not be divorced from the niece. Defendant denied the refund, alleging in its Opinion and Order No. IH 82-1 that, upon the death of trustor, plaintiffs' remainder interests were vested subject to being divested by their failure to survive trustor's widow.

■ Chief Justice O'Connell, in the case of *Browning v. Sacrison,* 267 Or 645, 518 P2d 656 (1974), indicated, while the law formerly favored the early vesting of estates, that rule was no longer widely accepted. Under the circumstances "the factors supporting early vesting [see n 11 at 649] must compete against other factors favoring the postponement of vesting. All of the factors 'must be given their respective weights in the ultimate determination of the judicially ascertained intent of the conveyor.' [Citing 3 Restatement, Property, § 243 at 1209 (1940).]"

One of the factors favoring postponement of vesting cited by Chief Justice O'Connell was the following:

"[U]nfortunate tax consequences may follow a determination that an interest is vested and most transferors who consider all the consequences which attach to a vested interest are inclined to postpone vesting until the time set for enjoyment of the interest in possession. * * *" *Browning v. Sacrison,* 267 Or 645, at 648, citing V American Law of Property, § 21.3 at 130 (Casner ed 1952).

■ This is precisely what plaintiffs allege in their brief,

i.e., the niece's husband "was to receive a bequest of $5,000.00 * * *. Instead, he received $923.16. * * * The legislature could not have intended to create a taxing situation whereby a person is relieved of 82% of his bequest from an estate upon the theory that the benefits of some property held in trust *may* eventually come to that person." [Plaintiff's Brief, at 7.] But the question is not what the legislature intended in this instance but what the trustor intended in light of the legislative enactment of ORS 118.100(2) and (3). For the factor favoring postponement of vesting to be considered, the trustor's intent would have to be reflected in the language of the trust read in its entirety and in light of the circumstances of its formulation. *See* 3 Restatement, Property, § 242. No mention is made in the trust with reference to postponing vesting until the death of the survivor of the trustor and trustor's wife because of the adverse tax consequences, or achieving that result by defining the remainders as contingent. Accordingly, it would appear that 3 Restatement, Property, § 242, *supra,* determines that the remainder interests of plaintiffs vested at trustor's death but Chief Justice O'Connell cites 3 Restatement, Property, § 243. That section goes forward to provide that if § 242, *supra,* does not determine the intent of the conveyor the process of construction requires consideration not only of § 242 but also of three constructional preferences, i.e., (a), (b) and (c). Assuming, but not deciding, that § 242, *supra,* did not determine the matter, § 243 (a), *supra,* provides:

"when the limitation under one of the two or more possible constructions conforms more closely to the intent commonly prevalent among conveyors similarly situated than it would under any other possible construction, such construction is preferred;"

Chief Justice O'Connell paraphrases (a) in his opinion, at 650, and goes forward to state:

"In modern law it is felt that when a devise is made to a life tenant with a remainder conditioned upon an ambiguous form of survivorship, the intent 'commonly prevalent among conveyors similarly situated' is deemed to require that the remainderman survive the life tenant rather than the testator. * * *"

If that reasoning were to apply here, plaintiffs would prevail, but it does not appear that that reasoning is applicable in this

instance to plaintiffs. Chief Justice O'Connell cites as authority for the above quotation 3 Restatement, Property, § 243, at 1208, 1209 and § 264. Section 243 (a) relates to constructional preferences for completeness of disposition of assets and for equality of distribution. See comment on clause (a), at 1212-1215. It does not relate to vesting. Rather, (b) does, which provides:

> "when the limitation under one of the two or more possible constructions causes results which are more in accord with the public interest than the results which would follow from the adoption of any other possible construction, such construction is preferred;"

That language is construed as providing that early vesting is uniformly treated as more in accord with the public interest. See comment on clause (b), at 1216.

Section 264 provides:

> "When property is limited by an otherwise effective conveyance 'to B for life, remainder to C and his heirs, but if C dies, then to D,' or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the interest of D can become a present interest if, but only if, C is dead at the time of the termination of the interest of B in accordance with the terms of the limitation."

Presumably Chief Justice O'Connell refers to this rule as constituting an "ambiguous form of survivorship." Section 264, however, does not apply to the trust provisions involved here and applying §§ 242 and 243 (b) to the facts involved, it is difficult to escape the conclusion that the trust assets vested in plaintiffs on the death of the trustor.

In the instant case, the trustor could have revoked the trust at any time before his death. No revocation was made. When the trustor died, the economic benefits and burdens passed to the beneficiaries, even though the enjoyment of the benefit did not occur until after the death of the life tenant.

Accordingly, the court finds that the beneficiaries' interest vested at the death of the trustor and defendant's Opinion and Order No. IH 82-1 is hereby affirmed. Costs to neither party.