Argued and submitted November 6, affirmed December 6, 1989

In the Matter of the Estate of
Gerold Springer Whitlatch, aka
Gerald Springer Whitlatch, aka
Garold Springer Whitlatch, aka
Jerry Whitlatch, Deceased.

ESTATE OF GEROLD SPRINGER WHITLATCH,
*Respondent,*

*v.*

RICHARDSON,
*Appellant,*
*and*

WHITLATCH et al,
*Proponents.*

(87-103-PR; CA A50972)

783 P2d 46

Donald R. Crane, Klamath Falls, argued the cause for appellant. With him on the brief was Crane & Foltyn, Klamath Falls.

Neal G. Buchanan, Klamath Falls, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Norma Richardson (proponent) appeals from a judgment dismissing her petition to have a handwritten document probated in Oregon as the last will of Gerald Springer Whitlatch (decedent) and determining that decedent died intestate. We review *de novo* and affirm.

Decedent was a resident of Klamath Falls. Because he owned cattle that he wintered in Redding, California, he traveled there frequently in the winter months to feed them. Occasionally, he would stay with his friend, proponent. Proponent testified that decedent came to her home in Redding late on the evening of January 15, 1986. He asked her to bring him some blank paper from his suitcase. She brought him several pieces of stationery bearing the name and address of a Klamath Falls lumber company. She said that decedent sat, either in her kitchen or living room, and wrote out and signed the document that she seeks to have probated as his will:

> "January 15, 1986.

> "When I die - I want Marie to have Power of Attorney to sign all papers of *mine,* with Dan Whitlatch as advisor[.]

> "I want Norma Richardson to have Meathead[,] my dog[.] I want her to have $2,000.00 cash for Meathead['s] *care and keep*[.] Norma is to get $10,000.00 dollars for her and whichever pickup of mine she *wants*[.]

> "Marie is to be taken care of first above all things[.]

> "The money Roy and his boys have from the estate of my folks is to be given to *them.* Roy, Jerry & Dick gets 1/3 of rest of my property and holdings after all bills are payed [*sic*] & 2/3 of the rest goes to Paul and his three boys[.]

> "My personal properties like tools watch and the like to be [divided] as [they] see fit[.]

> "[signed by decedent]."

(Emphasis in original.)

He then asked proponent to type the handwritten document. She testified:

> "[H]e said 'well my brothers can't read my writing so you will have to, will have to type it.' "

Proponent testified that she did so that evening. The typed document contains two blank lines, presumably for witnesses'

signatures. Decedent signed and she notarized the typed counterpart, which incorporated corrections in punctuation, grammar and spelling. After she had typed the document, proponent kept the handwritten version, because "I thought possibly he would want to change it or want to have it back, *and he said he didn't want it* so I thought well I will just keep it anyway." (Emphasis supplied.) Decedent took the typed counterpart home to Klamath Falls and showed it to his brother Paul and sister-in-law Barbara.

Proponent testified that, in September, 1986, decedent came to her and asked her to prepare a codicil to his will:

"He said would you put [some] kind of a note on the back of my will, * * * because I have another dog now. I want him taken care of too."

She prepared a codicil to the typed counterpart, which decedent signed and she notarized. It provided:

"I want Norma Richardson to have Ralph, my dog, I want her to have $2,000 cash for Ralph's *care and keep.*

"[signed by decedent]."
(Emphasis in original.)

She numbered the typed counterpart of the will "Page 1 of 2" and the codicil page "Page 2 of 2." Decedent kept the typed pages together.

Proponent testified that, in December, 1986, decedent came to her with the typed counterpart and with the codicil and asked her to retype them, incorporating the codicil into the text and making changes that he had written on the document. Proponent did so; decedent signed it, and proponent notarized his signature.

Decedent's wife, Marie, testified that decedent died on December 20, 1987, on their 57th wedding anniversary. She filed a petition for administration of an intestate estate and appointment of a personal representative. The petition alleged:

"Decedent's brothers have indicated that decedent showed them a Will approximately two years old. Your Petitioner is arranging to have letters sent to attorneys in private practice in Klamath Falls and in Redding, California, in order to determine if a Will actually exists. However, at this point it is assumed that no such Will does exist."

The trial court granted the petition, appointing Marie personal representative. Proponent then filed a petition for the admission of the handwritten document to probate.[1] The trial court denied the petition and determined that decedent died intestate.

ORS 112.255(1)(c) provides:

"(1)    A will is lawfully executed if it is in writing, signed by or at the direction of the testator and otherwise executed in accordance with the law of:

"* * * * *

"(c)    The place of execution at the time of execution."

On its face, the handwritten document qualifies as a holographic will under California law. West's Ann Cal Code, Probate Code, Vol 54A, § 6111 (1989 Supp). Neither of the typed wills satisfies the requirements for execution of a will under either California or Oregon law, because they are not signed by two attesting witnesses. West's Ann Cal Code, Probate Code, Vol 54A, § 6110 (1989 Supp); ORS 112.255(1); ORS 112.235(3).

The evidence is undisputed that the handwritten document was written by decedent. Proponent contends that it was a valid holographic will under California law, because it was executed in California and decedent intended that it be his last will. Decedent's intent is evidenced, proponent contends, by the fact that he had the handwritten document typed so that his brothers could read it and that he later attempted to revise it without changing its substance. Because the later, typed documents were not valid wills, proponent contends, decedent did not revoke the earlier handwritten document under either Oregon or California law; therefore, it remained valid at the time of decedent's death. The trial court found

---

[1] In opposition to the petition, Marie filed an answer challenging the validity of the alleged will on several grounds. Proponent filed a motion to dismiss the answer, contending that the alleged will should first be admitted to probate as a procedural matter, ORS 113.035, and contested by Marie only pursuant to ORS 113.075. The trial court's judgment denies admission of the will but treats the dispute as a will contest. Whether, as a procedural matter, the will should have been admitted to probate first and then have been subject to challenge only pursuant to ORS 113.075 is not raised on appeal, *see Schrei v. Frye,* 25 Or App 191, 197, 548 P2d 1001 (1976), and we therefore do not consider whether the court followed the proper procedure. The only questions raised on appeal are whether the handwritten document was written by decedent in California and whether he intended it to be his will.

that the handwritten document was "probably" executed in California but also found that decedent intended that document to be only a draft and not his last will.

Holographic wills are not recognized in Oregon. The handwritten document is a valid holographic will only if it was executed in California. There is significant evidence that indicates that it was not. It is dated January 15, 1986, as is the text portion of the first typed copy. That is different from the date on the notarization of the first typed copy, January 17. Proponent testified that she notarized the first typed version on January 15 and that the January 17 date is a typographical error. However, it is obvious that the notarization on the first typed copy is in a type different from that used for the text of the document, suggesting that the first typed copy was notarized on a date different from when it was typed. The parties do not attempt to explain the reason for the difference in type. Evidence of decedent's business activities around January 15 indicates that he was in Klamath Falls, not in Redding, late that day.

Whether or not decedent wrote and signed the handwritten document in California, we find, as did the trial court, that he did not intend it to be his last will. The facts that he had it typed out and notarized, with lines for witnesses' signatures, and that he told proponent that he did not want the handwritten copy, indicate, in our view, that he attached significance to the typed version but not to the handwritten copy. He carried the typed version with him. The evidence must show that decedent had a testamentary intent with respect to the *very paper* sought to be probated. *See In Re Blain's Estate,* 140 Cal App 2d 917, 295 P2d 898, 901 (1956). Although the handwritten document may have expressed decedent's intentions with respect to the disposition of his property, we find that he did not intend that document to be his last will. None of the typed counterparts was validly executed. Accordingly, the trial court properly dismissed the petition to probate the handwritten document and determined that decedent died intestate.

Affirmed.