ORTEGA, P. J.
*22 Toni Horn and Erik Culver, decedent's grandchildren, appeal a limited judgment that denied their petition to admit a writing into probate as a will or to open a small estate under ORS 112.238. That statute provides that a writing that does not satisfy the statutory will formalities may nonetheless be probated if it is proven by clear and convincing evidence that decedent intended that writing to be his or her will. Because we conclude that the probate court did not base its decision on decedent's intent at the time she created the writing, we vacate and remand *634 to the probate court to make that determination.
Declining appellants' request for de novo review, we review for legal error and are bound by the probate court's factual findings if there is evidence to support them. ORS 111.105(2) ; Hobbs v. Harrington , 284 Or. App. 125, 127, 391 P.3d 915 (2017). We state the facts in accordance with that standard.
Five days after her husband's death, decedent Marilyn Boysen, in the presence of Horn and her husband David, prepared a handwritten document. She signed the writing, placed it in an envelope with the words "To Toni [Horn] from Grandma" on the outside, and gave it to Horn with instructions to hold it until she died. The writing states:
"Bill Boysen, my husband, died May 22, 2008, early morn[ing], leaving myself, his wife, Marilyn Boysen, his sole heir.
"In the event of my death, Marilyn Boysen, I leave my worldly possessions to our two grandchildren Toni Culver Horn and Erik Culver.
"Bill's approximately 1 1/4 carat ring to Erik Culver.
"Bill's 1 carat wedding band to David Horn.
"My jewelry to Toni Horn.
"All real property and personal property to be divided between Toni [Horn] and Erik [Culver]. They can sell everything or whatever they wish.
"Any real property, if they decide to keep it must remain in their two names and pass on to Bill and Marilyn Heirs.
"[s/ Marilyn Boysen] 05/27/2008"
*23 Horn complied with decedent's instructions and kept the writing in her safe until decedent's death on November 5, 2016. After decedent died, Horn and Culver petitioned the probate court to admit the writing to probate. In support of their petition, Horn and her husband David submitted sworn declarations in which they averred the above facts and that decedent "went to great length[s] explaining what [Horn and Culver] needed to know about what was valuable, what things were family heirlooms, and what specific items she wanted each of us to have, and how important it was to her to be buried next to [her husband] when she passed."
At a hearing on the petition, Horn and David testified to the above facts, though, on cross-examination, David testified that decedent did not explain to him the value of the items listed in the writing. Culver testified that, about one month after decedent made the writing, decedent told him "I've given Toni [Horn] a will. Don't speak of it. She has it and she'll know what to do when my time comes." Appellants also submitted documents with decedent's handwriting and signature, which matched the writing submitted for probate.
Respondents, Beth Deaver, Debra Whitaker, and Jill Lane, who are decedent's three daughters and intestate heirs, presented evidence that decedent never told them or decedent's friend, Cheryl Woltz, about having a will. Additionally, Deaver and Whitaker testified that decedent was "in a real bad state" after her husband's death and that, during the years preceding her death, decedent asked them to place sticky notes on the items they wanted to keep after she passed. Finally, Whitaker testified that Horn and Culver did not see decedent for several years because of family disagreements and that, consequently, Whitaker doubted that decedent remembered creating the writing.
The probate court issued a letter opinion, which found:
"[T]he document is one page, handwritten on yellow lined paper. It is dated May 27, 2008. The document first states that decedent's husband had died five days earlier. Testimony suggests that decedent was distraught and 'in a bad state' for several months following his death. The *24 document is signed by decedent and the signature is consistent with her signature on other documents. No witnesses signed the document. The document identifies only the two beneficiaries, without reference to the natural heirs, and bequests everything to the two (with the exception of a ring for one of the beneficiaries' husband). The two beneficiaries were present in her home and saw decedent write the document, sign it and place it in a plain envelope with the words 'To Toni From *635 Grandma' on the outside. Toni Horn testified that decedent told her to keep it unopened until her death. A portion of the testimony at the hearing is inconsistent with statements made in the sworn declarations of the beneficiaries. There was no opportunity for reflection of what decedent wrote, nor did decedent access legal or other professional advice. Decedent did not tell anyone about the document she gave to *** Horn. Statements made by decedent on several occasions after the document was written were inconsistent with the document. Testimony at the hearing suggests there was significant family acrimony at the time the document was written, and even more so in the following years."
Based on those findings, the probate court denied the petition to admit the writing to probate and ordered the estate to pass by intestate succession. Appellants timely appealed, arguing that the probate court erred by not authenticating the writing as a will for probate.
Generally, in order to execute a legally enforceable will, a testator must follow the formalities set out in ORS 112.235.[1] However, ORS 112.238 excuses those statutory formalities and provides:
*25 "(1) Although a writing was not executed in compliance with ORS 112.235, the writing may be treated as if it had been executed in compliance with ORS 112.235 if the proponent of the writing establishes by clear and convincing evidence that the decedent intended the writing to constitute:
"(a) The decedent's will;
"(b) A partial or complete revocation of the decedent's will; or
"(c) An addition to or an alteration of the decedent's will."
Here, the writing that appellants submitted for probate does not satisfy the statutory formalities of ORS 112.235. Additionally, appellants do not contend that the writing revokes, adds to, or alters a formally executed will. Therefore, unless they can prove by clear and convincing evidence that decedent intended the writing to be her will, her estate passes by intestacy.
Appellants contend that, once the proponent of a noncompliant will establishes that the offered document has been signed by the decedent and the document is authenticated, the court should look within the four corners of the document to see if it looks like a will. Essentially, they urge us to adopt the proverbial "duck test": if it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck. See Nat'l Prods. Inc. v. Belkin Int'l, Inc. , No C16-402 TSZ, 2017 WL 3084435 at *7 (WD Wash July 19, 2017).
Respondents, on the other hand, argue that we should look to the decedent's testamentary intent at the time *26 of her death. The Supreme Court has made clear, however, that, when evaluating a compliant will, courts look to the testator's intent at the *636 time of execution . See In re Estate of Nawrocki , 200 Or. 660, 677, 268 P.2d 363 (1954) ("A will speaks as of the time of the testator's death, but the intent of the testator is manifested as of the time when the will is executed."); see also Putnam et ux. v. Jenkins et ux. , 204 Or. 691, 710, 285 P.2d 532 (1955) ("[I]t is recognized by the great weight of authority that evidence of the facts and circumstances existing at the time of the execution of the will, and known to the testator, is admissible * * * to enable the court to place itself in his situation, to see things as he saw them, and to apply his language as he understood and intended it.") (internal quotation marks omitted); Gomoll v. Temple , 145 Or. 299, 301, 27 P.2d 1018 (1933) ("In construing a will the vital requirement is to ascertain what the testator meant, and his intention must be gathered from the instrument as a whole, read in the light of the circumstances which surrounded him when it was made."). There is nothing in the text of ORS 112.238, that statute's legislative history, or ORS chapter 112, that suggests that courts should adopt a different focus when analyzing a noncompliant will under ORS 112.238. Therefore, an evaluating court must look for clear and convincing evidence of whether the decedent intended the specific writing at issue to be his or her will at the time of its creation.[2] See Estate of Whitlatch v. Richardson , 99 Or. App. 548, 553, 783 P.2d 46 (1989) (drawing a distinction between a decedent's intent with respect to the disposition of property and the intent that a specific document be his or her last will).
ORS 112.238 was enacted in 2015 as a part of a larger effort to clarify and modernize sections of the Oregon probate statutes. Or. Laws 2015, ch. 387, § 29. This statute has not yet been examined by our court. "Our goal in interpreting statutes is to discern, to the extent possible, what the legislature intended a provision to mean.
*27 State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). We examine the statutory text in context along with its legislative history[.]" Lake Oswego Preservation Society v. City of Lake Oswego , 360 Or. 115, 124, 379 P.3d 462 (2016). The statutory text is clear in that it allows a noncompliant will to be probated if clear and convincing evidence shows that the decedent intended it to be his or her will. The only remaining question is what is required to satisfy the clear and convincing evidence standard.
Clear and convincing evidence is a common standard and means that "the truth of the facts asserted is highly probable." Krueger v. Ropp , 282 Or. 473, 478, 579 P.2d 847 (1978). Because the legislative history is helpful in this case, we consider it to the extent that it provides context to what the clear and convincing evidence standard requires under ORS 112.238 specifically. See Lake Oswego Preservation Society , 360 Or. at 142, 379 P.3d 462. The legislative history reveals that, in the context of ORS 112.238, the clear and convincing evidence standard requires more than presenting the document itself or the document and an authenticated signature. Exhibit 2, Senate Committee on Judiciary, S.B. 379, Mar. 18, 2015 (amendments to the Oregon Probate Code Work Group Report prepared by Susan Gary). Although the document and an authenticated signature are certainly relevant, the standard requires more and may be satisfied with, for example, "evidence of the circumstances of the creation of the document, testimony of people who heard the decedent discussing his [or her] intent to execute a will, testimony of people who saw the decedent prepare or sign the will, or other documents prepared by the decedent that described the will."[3] Id.
Here, the probate court's findings indicate that its analysis was not focused on the decedent's intent at the time of the writing. That is, on this record, several of the probate court's findings had little to no bearing *637 on decedent's intent at the time of the writing's creation. First, the probate court found that the writing "identifies only the two beneficiaries, without reference to the natural heirs, and bequests *28 everything to the two (with the exception of a ring for one of the beneficiaries' husband)."[4] Under the circumstances here, these facts have little bearing on decedent's intent at the time of the writing.
The probate court also found that "[s]tatements made by decedent on several occasions after the document was written were inconsistent with the [writing]. Testimony at the hearing suggests there was significant family acrimony *** in the [years following the execution of the writing]." These findings likewise have little bearing on decedent's intent, because, as noted, the court's role is to determine whether decedent intended the writing to be her will at the time she wrote it, not to determine how, at the time of decedent's passing, she spoke about how her assets would be distributed. How decedent viewed her relationships after the writing was made or at the time of decedent's death does not explain, in these circumstances, decedent's intent when she prepared the writing and, thus, reflects an incorrect analysis of what was required of the probate court.[5]
Lastly, the findings that the probate court did make concerning the circumstances at the time of the writing include the findings that the document was written and signed by the decedent, with a signature that matched other documents, and that it was written, signed and placed in an envelope in the presence of Horn and Culver. The probate court did not make an express finding of decedent's intent at the time of the writing. In light of the focus of the court's findings on events outside of the central question in the analysis, we conclude that the probate court did not *29 correctly make its determination based on decedent's intent at the time the writing was created.
Because we conclude that the probate court incorrectly failed to focus its analysis on decedent's intent that the writing function as her will at the time it was created, and that formed the basis for the probate court's determination that the estate must pass by intestate succession, the probate court erred as a matter of law. Therefore, we vacate and remand for the court to evaluate the facts under the correct standard.
Vacated and remanded.

ORS 112.235 provides:
"(1) Except as provided in ORS 112.238, a will shall be in writing and shall be executed in accordance with the following formalities:
"(a) The testator, in the presence of each of the witnesses, shall:
"(A) Sign the will;
"(B) Direct one of the witnesses or some other person to sign the name of the testator and the signer's own name on the will; or
"(C) Acknowledge the signature previously made on the will by the testator or at the testator's direction.
"(b) At least two witnesses shall each:
"(A)(i) See the testator sign the will;
"(ii) Hear the testator acknowledge the signature on the will; or
"(iii) Hear or observe the testator direct some other person to sign the name of the testator; and
"(B) Attest the will by signing the witness' name to the will within a reasonable time before the testator's death.
"(2) The signature by a witness on an affidavit executed contemporaneously with execution of a will is considered a signature by the witness on the will in compliance with subsection (1)(b)(A)(iii) of this section if necessary to prove the will was duly executed in compliance with this section.
"(3) A will executed in compliance with the Uniform International Wills Act shall be deemed to have complied with the formalities of this section.
"(4) As used in this section, 'writing' does not include an electronic record, document or image."

One legal scholar describes this as operative testamentary intent, which is "concerned with whether the decedent intended a document that expresses donative testamentary intent to be legally effective." See generally Mark Glover, A Taxonomy of Testamentary Intent , 23 Geo. Mason. L. Rev. 569, 589 (2016) (providing a taxonomy for testamentary intent and exploring its application to various components of the law of wills).

The list is described as illustrative of facts a court may consider and not exhaustive.

We note that there is no suggestion that decedent lacked capacity to create a will when she drafted the document, nor is there a suggestion that the writing was created as a result of fraud, duress, or undue influence.

We note that the probate court found that decedent "did not tell anyone about the [writing] she gave to *** Horn." Culver testified that decedent did tell him about the writing, referred to the writing as her will, and implied that she intended him to be a beneficiary after her death, which he likely would not have been under the intestacy statutes. Respondents testified that decedent did not tell them about a will, which could nevertheless be consistent with Culver's testimony. It is not clear that the probate court's finding was based on a credibility determination. Because the case will be remanded to the trial court we need not address whether this finding was supported by the evidence.